(24 Misc. Rep. 566.)

### SMITH v. LANSING et al.

(Supreme Court, Special Term, Erie County. September, 1898.)

1. WILLS—CONSTRUCTION—VESTED REMAINDERS—DIVESTITURE.

   Testator gave a fund in trust for his daughter, and provided that on her death it should go to all her surviving children, if four or more, and, if less than four, a certain part of the fund was to go to each of the surviving children, and the residue was to go to all his children then living. *Held* that, conceding that part of the fund vested in the grandchildren on testator's death, it was subject to be devested as to all grandchildren should the daughter have four or more children, and was subject to be devested as to each grandchild should he not survive the daughter, and subject to be devested to the extent of enabling every grandchild thereafter born which would be living at the death of the daughter to take his proportionate share.

2. SAME—DESIGNATION OF BENEFICIARIES—BASTARDS.

   A will provided for the distribution of a fund among testator's grandchildren on the death of his daughter. A child of testator's son was born out of wedlock, but its parents were lawfully married afterwards, and before the death of testator's daughter. The will made no provision for illegitimate grandchildren, and such child was born after testator's death. Gen. Laws 1896, c. 48, § 18, in force at the daughter's death, provides that an illegitimate child whose parents have intermarried shall become legitimate, and entitled to all the rights of a legitimate child, but that an estate or interest vested before the marriage shall not be divided or affected by reason of such child being legitimized. *Held*, that such child was entitled to share in the distribution.

3. SAME—GRANDCHILDREN AND GREAT-GRANDCHILDREN.
At the time of making a will testator had no great-grandchildren, and made no provision for such descendants. The will provided for the distribution of a trust fund per capita among. his grandchildren living at the beneficiary's death. *Held* to exclude great-grandchildren.

4. SAME—LEGACIES—INTEREST.
Testator provided for the distribution of a trust fund among grandchildren on their mother's death. *Held*, that the legacies were general legacies, and would bear interest from the mother's death.

5. SAME.
A bequest of the residue of a fund and securities on the happening of a contingency is a specific bequest, and legatees are entitled to earnings on such funds and securities, but not to interest.

6. SAME—DEATH OF LEGATEE—RIGHTS OF PERSONAL REPRESENTATIVE.
Under a testamentary trust for a daughter, trustees were required to pay her the income twice a year. *Held*, that executors of the daughter were entitled to the income from date of last payment to her death.

7. SAME—TRUSTS—COMPENSATION OF TRUSTEE.
A will creating a trust provided commissions for a trustee for investing the fund and collecting and paying over the income, but was silent as to whether he was to receive commissions on the final distribution of the funds. *Held*, that the trustee was entitled to one-half the statutory fees allowed executors for receiving and paying out moneys on a distribution of the fund, to come out of the residue after paying general legacies.

8. SAME.
A testamentary trustee on a settlement of his accounts is entitled to be paid commissions and expenses, including reasonable attorney's fees in a suit for construction of the will and settlement of his accounts.

9. SAME—RESIGNATION OF TRUSTEE—INFANTS.
A trust being completed, with the exception of holding a fund for an infant grandchild, the trustee may be allowed to resign as trustee of the infant on paying the fund over to his successor.

10. SAME—ACTION TO CONSTRUE WILL—RIGHT TO COSTS.
Parties entitled to share in the distribution of a residuary fund, who are made defendants in an action for the construction of the trust agreement affecting such fund, are entitled to taxable costs and disbursements, to be paid out of the fund before distribution.

11. SAME—SALES BY TRUSTEE TO EFFECT DISTRIBUTION.
Where parties interested in the distribution of a trust fund are unable to agree on a division and distribution of the property subject to an infant's interest, the trustee may sell said property, subject to approval by. the court, on notice to the parties, at either public or private sale, as in his judgment will be for the best interests of the parties.

12. SAME—DISTRIBUTION—RESERVATIONS FOR TAXES.
Where a decision that a trust fund created by will is not subject to the collateral inheritance tax is subject to appeal, a distribution of the trust fund should be made subject to the contingency of an adverse decision by reserving a sufficient part of the fund to await the decision in the appellate court.

Suit by James M. Smith, sole surviving trustee under the will of Henry B. Gibson, deceased, against Livingston Lansing, individually and as executor, etc., of Catharine O. Lansing, deceased, Watts S. Lansing, William Watts Sherman, Henry G. Sherman, Richard R. Gibson, Catharine O. Lapham, Louis H. Gibson, Josephine E. Gibson, and others, to obtain directions as to the distribution of a trust fund and a settlement of his accounts.

Wilson & Smith (James C. Smith, of counsel), for plaintiff.

John A. Barhite, for Catharine O. Lapham, Jos. S. Crawford as assignee of Catharine O. Lapham, and Richard R. Gibson.

Walter H. Knapp, guardian ad litem and attorney for Louis H. Gibson, infant.

Frank H. Hamlin, for Catharine O. Lansing and Carl H. Lansing.

D. O. Lapham, for Josephine E. Gibson.

Wyncoop & Rice, for Livingston Lansing and Watts S. Lansing.

Livingston Lansing, for Watts S. Lansing and Livingston Lansing as executors of the estate of Catharine O. Lansing.

Man & Man, for William Watts Sherman and wife and for assignees of Harry G. Sherman.

LAUGHLIN, J.　　The plaintiff is the sole surviving trustee under the last will and testament of Henry B. Gibson, and brings this action to obtain the direction of the court as to the final distribution of the trust property remaining in his hands, and for a judicial settlement of his accounts.　　This involves and requires the construction of the will on several points.　　The will was made on the 21st day of September, 1863, and the testator died on the 20th day of November the same year, and his will was soon thereafter duly admitted to probate.　　The testator nominated and appointed executors of his will, and carefully prescribed their duties.　　The principal questions presented depend upon the proper construction of the third clause of the will, which provides as follows:

"Third. I give and bequeath to, and hereby request and direct my executors hereinafter named, as soon after my decease as may be, to assign and transfer to, Watts Sherman, of the city of New York, and Henry L. Lansing and John C. Sibley, of the city of Buffalo, trustees hereby nominated and appointed by me, all the promissory notes, and all the bonds not secured by mortgage on real estate, against individuals, or against any town or county in the state of New York, not in suit, which I shall own at the time of my death; and, in addition thereto, the following stocks, bonds, and notes, at their par value, to wit: Twenty-four thousand six hundred and fifty dollars in the capital stock of the Buffalo and State Line Railroad Company; sixty thousand dollars in the capital stock of the New York Central Railroad Company; twenty thousand dollars in the capital stock of the Rochester City Bank; five thousand dollars in the bonds of the Buffalo and State Line Railroad Company; five thousand dollars in the bonds of the Hudson River Railroad Company; twenty thousand dollars in United States six per cent. coupon bonds, known as 'five-twenties'; fifty thousand dollars in six per cent. bonds of the New York Central Railroad Company; eight thousand dollars in seven per cent. bonds of the New York Central Railroad Company; one thousand two hundred dollars in seven per cent. bonds of the New York City, Buffalo and Erie Railroad Company; twenty-five thousand dollars in six per cent. bonds of the state of Michigan; twenty-five thousand dollars in seven per cent. bonds of the Erie & Pittsburgh Railroad Company; ten thousand dollars in seven per cent. bonds of the city of Milwaukee; and ten thousand dollars in seven and three-tenths (7 3-10) per cent. United States treasury notes,—making two hundred and sixty-three thousand eight hundred and fifty dollars in said stocks, bonds, and notes, par value; and in addition thereto bonds and mortgages on real estate in the state of New York, not in suit, and not hereinbefore bequeathed to my said wife, sufficient in amount to make with the above the sum of four hundred and fifty thousand dollars in all, exclusive of interest; but if, at my death, there shall not be enough stocks, bonds, and notes of the several descriptions above mentioned belonging to my estate to make the respective amounts above mentioned,

estimating such stocks, bonds, and notes at their par value, then such deficiency shall be made up by other bonds and mortgages on real estate in this state. The fund thus created shall be held by the said trustees, the survivors or survivor of them, or their successors, as an investment in trust for the following purposes; that is to say: The said trustees are hereby authorized and required to divide the said fund and the securities composing the same, as soon as they receive them, into three equal shares, of one hundred and fifty thousand dollars each, and to set apart one of such shares for the use of each of my daughters herein named, respectively; to keep the account of each of said shares separately; to reinvest from time to time such portions of the principal of each share as shall be paid in, as soon as they can do so, in bonds and mortgages bearing interest payable semiannually, or in bonds or stocks of the United States or of the state of New York, or in United States treasury notes, so that the whole of the principal of each share shall be at all times invested; to collect and receive, from time to time, the dividends, interest, and income of said principal as soon as practicable after they become due; and to promptly pay to each of my said daughters the income of her said respective share, after deducting therefrom the compensation and expenses of said trustees, as hereinafter provided, to wit: To my said daughter Sarah M., the income of the share set apart for her use, during her life, for her sole and separate use and disposal; to my said daughter Catharine O., the income of the share set apart for her use, during her life, for her sole and separate use and disposal; and to my said daughter Mary T., the income of the share set apart for her use, during her life, for her sole and separate use and disposal. If either of my said daughters at her death shall leave four or more children surviving her, then I give and bequeath, on the death of such daughter, the whole of the share of said trust fund herein directed to be set apart for the use of such daughter, and the securities in which the same shall then be invested, to all the surviving children of such deceased daughter, in equal shares; but, if the number of her surviving children shall be less than four, then I give and bequeath, on the death of such daughter, out of the principal sum of the share of said trust fund herein directed to be set apart for her use, the sum of thirty-seven thousand five hundred dollars to each child of such deceased daughter surviving her, and the residue of the principal of such share, and the securities in which the same shall then be invested, I give and bequeath to all my grandchildren then living, including the child or children of such deceased daughter, in equal shares; and, if either of my said daughters shall not leave any child surviving her, then I give and bequeath on the death of such daughter the whole of the share of the said trust fund herein directed to be set apart for the use of such deceased daughter, and the securities in which the same shall then be invested, to all my grandchildren then living, in equal shares. If any or either of my grandchildren shall not have attained the age of twenty-one years when by the terms of this item of my will either of the foregoing legacies or bequests shall become payable to such grandchild, then the same shall be retained by the said trustees, and shall be set apart and separately invested and accounted for by them in trust for the grandchild owning the same, during his or her minority, and said trustees shall add to the principal the income thereof, from time to time, as it shall accrue, so that the share of such grandchild shall accumulate during his or her minority; and when such grandchild shall attain the age of twenty-one years the trustees shall pay over to him or her the whole of his or her legacies or bequests, with the accumulation thereof. And when the whole of such trust fund of four hundred and fifty thousand dollars, and the income thereof, shall be paid over to the persons respectively entitled thereto, according to the foregoing directions, the trust created by this item of my will shall cease. I also hereby request and direct the trustees of the fund created by this item to render to each of my said daughters on the fourth day of March and September in each year an account in writing of their receipts of income, disbursements, and amounts of principal received, and how reinvested. I hereby allow to the said trustees of the fund created by this item, and authorize and request them to receive, as a compensation for their services in collecting income and paying it over,

.and receiving payments of principal and reinvesting the same, the sum of five hundred dollars a year to each of said trustees so acting, and their reasonable expenses in addition, payable out of the income of said fund, so long as the principal of said fund shall amount to four hundred and fifty thousand dollars; but, whenever said principal in their hands shall be reduced, such compensation shall be reduced in like proportion. And I request and direct said trustees of the fund created by this item to act also as the agents of my said wife in collecting for her the interest on her bonds and mortgages, and receiving payments of principal thereon, and reinvesting the same in her name in bonds and mortgages on real estate in said county of Ontario at her request, without any further or other compensation than that herein above provided; their reasonable and necessary expenses therein, only, to be allowed and paid."

Watts S. Sherman, one of the trustees, died in 1865, and John C. Sibley, another of the trustees, was removed, and the plaintiff was appointed a trustee in his place, with the same powers and duties, by a judgment of this court, on the 2d day of July, 1873. Henry L. Lansing, the other trustee named in the will, died on the 29th day of September, 1889. No trustee was appointed in place of those who died. The executors assigned and delivered to the trustees property of the value of $450,000, and the trustees divided the same into three equal shares, and paid the income to the testator's daughters, as directed in this clause of the will. The testator's daughters Sarah M. and Mary F. died many years ago, and the two shares so held by the trustees for them have long since been distributed, and the trustees' accounts therefor have been judicially settled. The testator's daughter Catharine O. Lansing died on the 19th day of August, 1896, leaving, her surviving, only two children, the defendants Livingston and Watts S. Lansing. The defendants William Watts Sherman, Henry G. Sherman, Richard R. Gibson, Catharine O. Lapham, and Louis H. Gibson are other grandchildren of the testator who survived his daughter Catharine O. Lansing. The defendant Josephine E. Gibson was born in 1871, and is the daughter of Henrietta J. Gibson and John S. Gibson, who was a son of the testator. She was born out of wedlock; but her parents were lawfully married three years thereafter, and from that time on until her father's death, in 1891, lived together as husband and wife, and recognized Josephine as their lawful issue, bringing her up with their other children born to them in lawful wedlock, one of whom is the defendant Louis H. Gibson. Josephine claims a proportionate share of this fund as a granddaughter of the testator. Her right to take is contested by the representatives of some of the other grandchildren. Illegitimate children do not, with their brothers and sisters born in lawful wedlock, inherit property from their parents, excepting where the statute has removed the disability. For the same reason, illegitimate children will not be deemed included in the terms "children" or "grandchildren," when used in a will, unless the testator's intention to include them otherwise clearly appears. Collins v. Hoxie, 9 Paige, 81; Gelston v. Shields, 16 Hun, 143, 78 N. Y. 275. Josephine was not born until 11 years after the testator died; and of course, having no knowledge of the unfortunate circumstances attending her birth, as might be expected under such circumstances, he made no provision for illegitimate grandchildren. By section 18 of chapter 48 of the General Laws, being chapter 272

of the Laws of 1896, which became of force on April 17th of that year, it is provided as follows:

"An illegitimate child, whose parents have heretofore intermarried, or shall hereafter intermarry, shall thereby become legitimized and shall be considered legitimate for all purposes, entitled to all the rights and privileges of a legitimate child; but an estate or interest vested before the marriage of the parents of such child shall not be divested or affected by reason of such child being legitimized."

There have been so many fine distinctions in the construction of wills on the question as to when a remainder is vested or contingent that much time would be occupied, and I think without profit, in an endeavor to analyze and reconcile them. When the will was drawn, and at the time of the testator's death, Catharine O. Lansing was 45 years of age, and had five children living. There are no words of present gift to the grandchildren. The fund is bequeathed to and vested in the trustees for the purposes specified. Upon the death of his daughter, he says, "then I give and bequeath" said fund "to all the surviving children [if four or more] of such deceased daughter," and, if less than four, "then I give and bequeath" $37,500 to each of her surviving children, and the residue "I give and bequeath to all my grandchildren then living, including the child or children of such deceased daughter, in equal shares." There was no certainty, until the death of Catharine O. Lansing, that the grandchildren would take any share of this fund, for that depended upon the uncertain event of their surviving her, and of her leaving less than four children. I see no theory upon which any interest in the fund could vest in the grandchildren until after the death of two of Catharine O. Lansing's five children, and it does not appear when they died. But, if we were to hold that part of this fund vested in the grandchildren upon the death of the testator, and before the marriage of Josephine Gibson's parents, which legitimated her, yet upon no theory could it be said to be so vested absolutely. It was subject to be devested as to all grandchildren should Catharine O. Lansing have four or more children. If vested, it was also subject to be devested as to each grandchild should he or she not survive Catharine O. Lansing. If vested, it was also subject to be devested to the extent of enabling every grandchild thereafter born who would be living at the time of the death of Catharine O. Lansing to take his or her proportionate share. Whether the legacy be vested or contingent, the class is to be determined at the period of distribution, and all persons in being at that time who then answer the descriptions are included. Teed v. Morton, 60 N. Y. 502; Vincent v. Newhouse, 83 N. Y. 511; In re Smith, 131 N. Y. 247, 30 N. E. 130; In re Baer, 147 N. Y. 353, 354, 41 N. E. 702; Paget v. Melcher, 26 App. Div. 18, 49 N. Y. Supp. 922 (opinion by Rumsey, J.), affirmed on appeal 156 N. Y. 399, 51 N. E. 24. Whether the grandchildren were to take could only be determined by the facts existing at the death of Catharine O. Lansing. At the time of her death Josephine had been legitimated by the statute quoted, and was a lawful grandchild of the testator. Thus, when the time arrived for the trustees to carry out the direction of the testator, and distribute this residuary fund in equal shares among all his grand-

children who survived his daughter, they find Josephine grown to womanhood, and, although born out of wedlock, her parents had righted the wrong they did to her before she appreciated that they had wronged her; and they find that the legislature has decreed that she and all others similarly situated shall be deemed the legitimate offspring of their parents for all purposes. Justice to Josephine requires that she be permitted to share in this residuary fund with her brother and her cousins. The statute and the will are capable of such a construction, and the conclusion is sustained by precedent. Dutton v. Pailaret, 52 Pa. St. 113; Edward's Appeal, 108 Pa. St. 283, 290; McGunnigle v. McKee, 77 Pa. St. 85; Johnson's Appeal, 88 Pa. St. 354; Loring v. Thorndike, 5 Allen, 257; Sleigh v. Strider, 5 Call, 439; McGillis v. McGillis, 11 App. Div. 362, 363, 4 N. Y. Supp. 921; Id., 154 N. Y. 532, 49 N. E. 145.

At the time of the death of Catharine O. Lansing there were three great-grandchildren of the testator living, and their parents on the side of the testator were dead. Two of these great-grandchildren seek to share in this fund on the theory that the term "grandchildren" should be held to embrace great-grandchildren. At the time the testator made the will he had no great-grandchildren. The will was carefully drawn, and its language is clear and explicit. If the issue of deceased grandchildren take under this designation, they would share equally with the grandchildren, per capita, and not per stirpes; and it is not probable that the testator intended such an inequitable distribution of this fund. There is nothing to indicate that the testator intended to make his great-grandchildren the objects of his bounty, but, on the contrary, it appears that he excluded the issue of deceased grandchildren by providing that the fund shall be distributed equally among his grandchildren living at the time of the death of Catharine O. Lansing. Home v. Van Schaick, 3 N. Y. 538; Patchen v. Patchen, 121 N. Y. 432, 24 N. E. 695; Palmer v. Horn, 20 Hun, 71, 84 N. Y. 516; Chwatal v. Schreiner, 148 N. Y. 683, 43 N. E. 166; Mullarky v. Sullivan, 136 N. Y. 230, 32 N. E. 762; Shannon v. Pickell, 55 Hun, 127, 8 N. Y. Supp. 584; In re Robinson, 57 Hun, 395, 10 N. Y. Supp. 692; Daly v. Greenberg, 69 Hun, 228, 23 N. Y. Supp. 268; In re Potter, 71 Hun, 77, 24 N. Y. Supp. 592; Kirk v. Cushman, 3 Dem. Sur. 242.

Upon the death of Catharine O. Lansing, leaving less than four children surviving, her two children, Livingston and Watts S. Lansing, each became entitled to receive from the trustees out of this fund the sum of $37,500 in money. I think these were general legacies, and that the demand for interest from the time of the mother's death is well founded, and must be allowed. In re McGowan, 124 N. Y. 526–531, 26 N. E. 1098; Wheeler v. Ruthven, 74 N. Y. 431. The grandchildren are entitled to the earnings on the residue of the fund and securities, but not to interest, for the reason that it is a specific bequest of the fund and securities as they exist. Bliss v. Olmstead, 3 Dem. Sur. 277; Carr v. Bennett, Id. 439–458; Murphy v. Marcellus, 1 Dem. Sur. 288; Platt v. Moore, Id. 191. But these grandchildren take the entire residue of the original fund of $150,000, and there remains no fund from which to pay them interest, should such residue be less than

the balance of the principal with accrued interest; and therefore this ·question, which was argued at length, does not seem to be involved.

This clause of the will gave the interest and income of the fund to Mrs. Lansing during her life. Her executors contend that they are ·entitled to receive the interest which accrued on the money in bank .and the securities from the date of the last payment of interest to her until the date of her death. If this were an annuity, the objection to such allowance would be well taken; but there is a clear distinc-·tion between a bequest of income or interest and an annuity, and I think the claim must be allowed. Whitson v. Whitson, 53 N. Y. 479; In re Dewey, 153 N. Y. 66, 46 N. E. 1039; 2 Perry, Trusts, § 556; ·Clapp v. Astor, 2 Edw. Ch. 383; Riggs v. Cragg, 26 Hun, 98, 99; Earp's Appeal, 28 Pa. St. 374, 375; Sweigart v. Berk, 8 Serg. & R. 306; In 're Young, 23 Misc. Rep. 228, 50 N. Y. Supp. 402; Trust Co. v. ·Tobias, 21 Abb. N. C. 392–400. Upon the same principle, the exec-utors of Catharine O. Lansing are entitled to so much of the proceeds ·of the foreclosure sale of April '7, 1898, as represents the interest in .arrears which accrued on the mortgage before the death of their mother.

The will makes specific provision for the trustee's commissions for investing the fund and collecting and paying over the income ·during the life of the testator's daughters, but it is silent as to wheth-·er he is to receive commissions on the final distribution of the fund. I have considered the effect of the exception contained in the sixth ·clause of the will, and think it does not show an intention that the ·commissions provided for in the third clause are to be in full for the ·services of the trustee in paying out the fund. I am of opinion that the claim of the trustee to commissions at one-half the statutory rate prescribed for executors for receiving and paying out moneys ·should be allowed upon the distribution of the fund, excepting that part thereof which belongs to the infant, Louis H. Gibson; the entire .amount of such commissions to come out of the residue of the fund .after the payment of the general legacies to Livingston and Watts S. Lansing. Meacham v. Sternes, 9 Paige, 403; In re Mason, 98 N. Y. ·527; McAlpin v. Potter, 126 N. Y. 291, 27 N. E. 475; Woodruff v. Railroad Co., 129 N. Y. 27, 29 N. E. 251.

The trustee, having fully completed the trust, with the exception ·of holding that part of the fund to which the infant grandchild is en-titled, should be allowed to resign as trustee of said infant on paying ·said fund over to his successor; and the general guardian of the in-fant, who is his guardian ad litem in this action, should be appointed ·trustee for the infant, if he be willing to accept such trust. In re Allen, 96 N. Y. 327.

The trustee is entitled, also, to his unpaid commissions, and reason-.able expenses, earned under the third clause of the will before the ·death of Catharine O. Lansing; and he is also entitled to reasonable allowance for counsel fees in this action. Woodruff v. Railroad Co., :supra.

All of the parties who have appeared herein,—excepting the great-.grandchildren,—whose claims have been allowed, are awarded their

taxable costs and disbursements, to be paid out of the residuary fund before distribution. Claims for counsel fees for the attorneys of the respective parties, to be paid out of the fund, are made in some of the briefs. This question was not argued, and it has not been shown that any inequity will result from leaving each counsel to be paid out of the share of the fund coming to his clients, and to adjust the matter with his clients. On settling the judgment, I will hear the attorneys further on this point.

The allowance of the guardian ad litem of Louis H. Gibson for his services and counsel fees will be fixed by the court on the settlement of the final judgment, to be paid out of the said infant's share of the fund.

No evidence has been presented to enable the court to determine whether the property and securities can be divided without prejudice to the rights of any party, or whether a private or public sale will be most advantageous. If the parties are unable to agree upon a division and distribution of the residue of the property and securities, subject to the approval of the court as to said infant's interest, then the trustee should be authorized to sell said property and securities at private sale, subject to the approval of the court on notice to the interested parties, or at public sale, as in his judgment will be for the best interests of the parties.

In view of the decision of the appellate division (53 N. Y. Supp. 1104) that this fund is not subject to the collateral inheritance tax, it would not be proper for the court at this time to determine how such tax, if payable, should be borne. If there has been or is to be an appeal from such decision, the final judgment herein should provide that a sufficient part of this fund be reserved to await the decision of the court of appeals.