CENTRAL TRUST CO. OF NEW YORK v. SKILLIN et al.

(Supreme Court, Appellate Division, Second Department. December 6, 1912.)

1. WILLS (§ 498*)—CONSTRUCTION—INTENTION OF TESTATOR.

Whether illegitimate children, subsequently legitimatized by the marriage of their parents, are entitled to share in a remainder devised to the lawful issue of their father, does not depend on their legal status after the marriage, but on the intention of the testator.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1087–1089; Dec. Dig. § 498.*]

2. WILLS (§ 498*)—DESIGNATION OF DEVISEES—"LAWFUL"—"ISSUE"—"LAWFUL ISSUE."

A will, dated and which took effect in 1872, gave property in trust for the testator's son, with remainder to his "lawful issue." The son was then married and had children. After the death of his then wife, he married the mother of certain illegitimate children. Laws 1895, c. 531, providing that illegitimate children whose parents had theretofore intermarried or should thereafter intermarry should thereby become legitimatized. Held, that the illegitimate children were not entitled to share in the remainder, since, while all children, whether legitimate or not, are the "issue" of their parents, that word, when qualified by the adjective "lawful," which is the antithesis of unlawful or illegitimate, is ordinarily understood to mean those only begotten and born in lawful wedlock, and it cannot be assumed that the testator considered the contingencies of the birth of illegitimate children, the enactment of a statute by which they might be legitimatized, and the marriage of their parents.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1087–1089; Dec. Dig. § 498.*

For other definitions, see Words and Phrases, vol. 4, pp. 3778–3782; vol. 8, p. 7693; vol. 5, pp. 4025, 4026, 4029, 4030.]

3. WILLS (§ 439*)—CONSTRUCTION WITH REFERENCE TO STATUTES.

In discovering the intent of a testator, his will should be construed in the light of the statutory enactments in view of which it must be supposed to have been made, and the meaning of his language cannot be limited by a statute subsequently passed, with which he was wholly unfamiliar, and the existence of which he had no reason to anticipate.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 952, 955, 957; Dec. Dig. § 439.*]

Appeal from Trial Term, Westchester County.

Action by the Central Trust Company of New York, as trustee, against Marie E. Skillin, as executrix, and others. From the judgment, defendants Henry V. R. Skillin and others appeal. Affirmed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before JENKS, P. J., and HIRSCHBERG, BURR, WOODWARD, and RICH, JJ.

Henry Pegram, of New York City, for appellants.

Algernon S. Norton, of New York City (Percival H. Gregory, of New York City, on the brief), for respondents Florence S. Cloyd and Simeon D. Skillin.

Henry V. Poor, of New York City, for respondent Central Trust Co.

BURR, J.   On February 28, 1872, Simeon D. Skillin died, leaving a last will and testament, dated on the 19th of February in the same year, which contained, among others, the following provision:

"Fourth: I do give, devise and bequeath to my executors hereinafter named and the survivor of them the one equal fourth part of my estate in trust that they rent the real estate and invest the personal estate and apply the interest and income therefrom to the use of my son Henry T. Skillin for and during the term of his natural life and upon his sole receipt and not by way of anticipation, and upon the death of my said son Henry, that my said executors do pay over the said one-fourth part to his lawful issue should he leave lawful issue him surviving, but should he leave no lawful issue him surviving then upon the further trust that my said executors do pay over the said principal sum to my own heirs at law."

On June 22, 1864, Henry T. Skillin had married Sarah E. Albertson.   That marriage was dissolved by her death on March 5, 1909. At the date of the making of said will and of the death of the testator there were two children living, the issue of said marriage, and one was subsequently born.   These were the only children of Henry T. Skillin by his wife Sarah.   The eldest of these three children died May 4, 1906, without ever having had issue.   The remaining two survive.   Two months after the death of his wife, and on May 5, 1909, Henry T. Skillin married a second time.   Previous thereto, and at various dates between July 18, 1886, and March 24, 1896, the woman whom at that time he married had borne to him six children, all of whom are now living.   These children were born out of wedlock.   Previous to the latter marriage, and in 1895, an act had been passed entitled "An act to legitimatize children whose parents have intermarried after the birth of such children" (Laws of 1895, c. 531). It provided as follows:

"All illegitimate children whose parents have heretofore intermarried, or shall hereafter intermarry, shall thereby become legitimatized and shall be considered legitimate for all purposes.   Such children shall enjoy all the rights and privileges of legitimate children: Provided, however, that vested interests or estates shall not be divested or affected by this act."

This act, with a slight amendment, which took effect before the marriage and on May 25, 1899, has been re-enacted and now forms part of the statutory law of this state.   Its present form is as follows:

"All illegitimate children whose parents have heretofore intermarried or who shall hereafter intermarry shall thereby become legitimatized and shall become legitimate for all purposes and entitled to all the rights and privileges of legitimate children; but an estate or interest vested or trust cre-

ated before the marriage of the parents of such child shall not be divested or affected by reason of such child being legitimatized." Domestic Relations Law (Consol. Laws, c. 14; Laws of 1909, c. 19) § 24.

The judgment in this case determines that the two surviving children of Henry T. Skillin by his wife Sarah are entitled to the whole of the remainder of the trust estate of which he was the beneficiary during his life, and that his remaining children have no interest therein. The correctness of such judgment is before us for review.

[1, 2] The learned counsel for appellants in an interesting brief has discussed the meaning of the words "lawful issue" with reference to statutory rights of inheritance and succession. In our view the primary question in this case is: Whom did the testator intend when he used these words? Did he intend thereby to describe those children of his son, and those only, born in wedlock, or did he intend to describe all children of his who at the determination of the particular estate should be, by laws then in force, capable of inheriting real and of succeeding to personal property? We think the test is, not what the legal status of the six children born out of wedlock was after the marriage of their parents, but what was included in the nomenclature or vocabulary of the testator. Dodin v. Dodin, 16 App. Div. 42, 44 N. Y. Supp. 800, affirmed 162 N. Y. 635, 57 N. E. 1108; Matter of Leask, 197 N. Y. 193, 90 N. E. 652, 27 L. R. A. (N. S.) 1158, 134 Am. St. Rep. 866, 18 Ann. Cas. 516; Matter of Hopkins, 102 App. Div. 458, 92 N. Y. Supp. 463; United States Trust Co. v. Maxwell, 26 Misc. Rep. 276, 57 N. Y. Supp. 53.

"Lawful" is the antithesis of "unlawful" or "illegitimate." In popular usage, the words "lawful issue" have an accepted meaning. All children are "issue" of their parents, for the operation of natural laws favorable to the procreation and birth of offspring is not affected by the existence or nonexistence of a marital contract. But when this word relating to children is qualified by the adjective "lawful," it is ordinarily understood to mean those begotten and born in lawful wedlock, and none others. United States Trust Co. v. Maxwell, supra; Black v. Cartmell, 10 B. Mon. (Ky.) 188, 193; Brisbin v. Huntington, 128 Iowa, 166, 103 N. W. 144, 5 Ann. Cas. 931. At common law the words "child," "son," "issue," even when unqualified by the adjective "lawful," excluded all but the latter class. Cartwright v. Vawdry, 5 Vesey, 530; Earle v. Wilson, 17 Vesey, 528; Wilkinson v. Adam, 1 Vesey & Beames, 422, on page 461; Swaine v. Kennerley, idem, 468; Brisbin v. Huntington, supra; Collins v. Hoxie, 9 Paige, 81; Cromer v. Pinckney, 3 Barb. Ch. 466; Johnstone v. Taliaferro, 107 Ga. 6, 32 S. E. 931, 45 L. R. A. 95; Shearman v. Angel, Bailey, Eq. (S. C.) 351, 23 Am. Dec. 166; Gibson v. McNeely, 11 Ohio St. 131; Doggett v. Moseley, 52 N. C. (7 Jones, Law) 587; Thompson v. McDonald, 22 N. C. (2 Dev. & B. Eq.) 463; Heater v. Van Auken, 14 N. J. Eq. 159.

Adopting the canon of construction that intent must be gathered from the words of an instrument interpreted in the light of surrounding circumstances, a devise of a remainder to "issue" has been held not to include an illegitimate child (Flora v. Anderson [C. C.] 67

Fed. 182), and this, too, even though the parents of the child were subsequently married, and, by virtue of a statute then in existence, the child legitimatized (Hicks v. Smith, 94 Ga. 809, 22 S. E. 153; Lyon v. Lyon, 88 Me. 395, 34 Atl. 180); and the words "lawful issue," "children," and "heirs at law" have been held not to include an adopted child (Matter of Leask, supra; Matter of Hopkins, supra; Wyeth v. Stone, 144 Mass. 441, 11 N. E. 729; Reinders v. Koppelman, 94 Mo. 338, 7 S. W. 288; Russell v. Russell, 84 Ala. 48, 3 South. 900; Schafer v. Eneu, 54 Pa. 304; Jenkins v. Jenkins, 64 N. H. 407, 14 Atl. 557). And, on the other hand, a voluntary deed of settlement, with remainder to a child, or children, where there was no other child, has been held to include an adopted child (Sewall v. Roberts, 115 Mass. 262), and to prevent a legacy from lapsing it was held that an adopted child may take under a statute providing that an adopted child shall be the child of its parents to all legal intents and purposes, and with all rights of inheritance "the same as if born to them in lawful wedlock" (Warren v. Prescott, 84 Me. 483, 24 Atl. 948, 17 L. R. A. 435, 30 Am. St. Rep. 370); and in one notable instance in this state a devise to "children" has been held to include the illegitimate children of testator and to exclude his lawful issue (Gelston v. Shields, 16 Hun, 143, affirmed 78 N. Y. 275).

As a general rule, the will speaks as of the date of the death of the testator, although, under certain circumstances, in discovering testator's intent, resort may be had to the date of the writing. Matter of Kear, 133 App. Div. 265, 117 N. Y. Supp. 667. No case has been found where it has been made to speak, as appellants would have it in the case at bar, from the date of the statute enacted 23 years subsequent to testator's death. At the date of the writing of Simeon D. Skillin's will, and at the date of his death, his son Henry was living in lawful wedlock with his wife, and there were persons in existence who answered the description of his "lawful issue," whether the words were interpreted according to popular usage or the rules of the common law. The meretricious relations which resulted in the birth to his son Henry of six illegitimate children had not then begun. There was no general statute of this state in existence at that time under which, even had such children been in existence, they could have been legitimatized.

To sustain appellants' claim, we must assume that the testator considered the possibility that his son might at some later period beget illegitimate children, that the Legislature of the state might subsequently enact a statute under which these children might be legitimatized, that his son would take advantage of the beneficial provisions of such a statute, and that, when he used the words "lawful issue," he contemplated all these contingencies, and intended to provide that, if each and all occurred, such children should be recipients of his bounty. The statement of the proposition carries its refutation with it.

[3] Appellants contend that the devise of the remainder in this case was a devise to a class, and, invoking the rule that when there

is a devise to a class those persons who are members of the class when the devise vests in possession are entitled to take thereunder, assert that, although originally unlawful issue, at the date of Henry T. Skillin's death, by virtue of the statute which declared that through the marriage of their parents illegitimate children should become legitimate for all purposes and entitled to all the rights and privileges of legitimate children (Domestic Relations Law, supra), and by marriage of their parents, these six children had entered the class and were entitled to every right of a member thereof. But this would be defining the limitations of the class, not by the words of the testator, as he understood and used them, but by the words of an act with which he was wholly unfamiliar and the very existence of which he had no reason to anticipate. In discovering the intent of the testator, a will should be construed in the light of the statutory enactments in view of which it must be supposed to have been made. Gibson v. McNeely, supra.

Again a different rule might result under different circumstances. The father of an illegitimate child might properly recognize different obligations and be actuated by different motives than a grandfather or other remote ancestor in making provisions for that child. The latter might well be considered to have no interest in making a bastard descendant, equally with his other descendants, an object of his bounty. Hicks v. Smith, supra, 94 Ga. 815, 22 S. E. 153. As was said in Warren v. Prescott, supra, considering an act of adoption:

"By adoption, the adopters can make for themselves an heir; but they cannot thus make one for their kindred."

So parents may make for themselves illegitimate children, to become their lawful issue; but they cannot by such act distort the plain meaning and intent of a phrase used by one of their kindred in reference to their offspring. It is not necessary now to decide whether any different result would have followed if testator's will had been published subsequent to the birth of these children and the enactment of the statute. Hartwell v. Tefft, 19 R. I. 644, 35 Atl. 882, 34 L. R. A. 500.

Most of the cases relied upon by the appellants are, it seems to us, clearly distinguishable. In Loring v. Thorndike, 5 Allen (Mass.) 257, the devise in remainder was to the life tenant's lawful "heirs." So in the case of McGunnigle v. McKee, 77 Pa. 81, 18 Am. Rep. 428, the devise was to testator's son, with a provision that, if this son died without an "heir," the land should be divided between another of testator's sons and the latter's children. The son had a child born out of wedlock, subsequently legitimatized by a special act of the Legislature. It was there held that by the use of the word "heir" testator intended one capable of inheriting, and that the natural child who had been legitimatized was thus capable. The word "heir" may be considered to define a legal relation, and if, at the time the estate vested, the illegitimate child had become legitimatized, so that it answered the description of "heir," it might be said that this fulfilled the declared intent of the testator. Black v. Cartmell, supra.

The word "issue," however, relates rather to a natural than a legal relation. The opinion in the case of Sleigh v. Strider, 9 Va. (5 Call) 439, contains only the dogmatic statement of a rule, without argument or the citation of authority to support it; and if this case and the case of Miller's Appeal, 52 Pa. 113, sustain appellants' contention, we believe that they are contrary both to reason and the great weight of authority, and that they should not be followed.

The judgment should be affirmed, with costs to the plaintiff and defendants respondents, payable out of the estate. All concur.