In the Matter of the Estate of HUDSON HOAGLAND, Deceased.

Surrogate's Court, New York County, June 25, 1925.

Wills — construction — testator by will directed payment of trust fund to designated beneficiary, principal of which " upon his death leaving a child or children surviving " was to be paid to said child or children — if no child survived said beneficiary, remainder became vested in residuary legatees — daughter of beneficiary, legitimatized by subsequent marriage of beneficiary, pursuant to Domestic Relations Law, § 24 — death of beneficiary determined ultimate remainderman — provisions of Domestic Relations Law, § 24, sustain right of daughter to take entire fund — words in statute (Dom. Rel. Law, § 24) " an estate or interest vested or trust created " means vested remainder or legal interest.

A will which directs the payment of a trust fund to a designated life tenant as beneficiary, the principal of which " upon his death leaving a child or children surviving " was to be paid to such child or children, and in the event no children survived said life tenant said remainder shall become vested in the residuary legatees, should be construed as giving the entire fund to the daughter of said life tenant, where it appears that, having been legitimatized by a subsequent marriage of said life tenant, pursuant to the provisions of section 24 of the Domestic Relations Law, she became at the death of said life tenant the ultimate remainderman.

Moreover, the language of section 24 of the Domestic Relations Law, to the effect that an illegitimate child whose parents shall intermarry, shall thereby become legitimatized and become legitimate for all purposes and entitled to all the rights and privileges of a legitimate child, sustains the right of said daughter to take said fund.

The words in the statute (Dom. Rel. Law, § 24) " an estate or interest vested or trust created " refers to a vested remainder or a vested legal interest of a *cestui* in a trust and not to a contingent remainder.

PROCEEDING for accounting involving construction of will.

*Van Doren, Conklin & McNevin,* for the trustees.

*Rorke & Kane* [*Frederick L. Kane* of counsel], for M. H. Fitzwater.

*James Gillin,* for Ella H. Hunt and Laura M. Hoagland.

*Hamilton & Freeman,* for Frank Belknap and another.

FOLEY, S.:

This is an accounting proceeding in which a question arises as to the persons entitled to the remainder in a trust fund of $25,000 created by the will of the testator. The fund is claimed by a daughter of the life tenant Charles F. Hoagland (a nephew of the testator), as the only child left by him. This daughter was born out of wedlock, but was legitimatized by the subsequent marriage of her parents by reason of the provisions of section 24 of the

Domestic Relations Law. On the other hand, the fund is claimed by the residuary legatees under the alternative gift contained in the will, which provided that if no children survived the life tenant, the remainder should vest in the residuary legatees. The material parts of the will read as follows:

" *Seventeenth.* I give and bequeath to my executors hereinafter named, or the survivor of them, the sum of Seventy-five thousand dollars, in trust, however, to invest and keep the same invested and receive the income and profits thereof, and to pay over the income thereof as follows:     *     *     *

" To pay over the income of Twenty-five thousand dollars ($25,000) thereof to Charles F. Hoagland of Syracuse, New York, during his life, and upon his death leaving a child or children surviving him, to pay over the principal of said sum to such child or children.     *     *     *

" In the event that any one of said legatees shall die leaving no children surviving him, then said Twenty-five thousand dollars herein bequeathed to such legatee shall revert to and become a part of my residuary estate.     *     *     *

" *Thirtieth.* All the rest, residue and remainder of my estate and property, that is to say, all not hereinbefore disposed of, I give, devise and bequeath to my nephews and nieces, to be divided between them in the proportions which the respective gifts made to them herein bear to each other."

The question to be determined is: Did the testator intend to describe those children of his nephew, and those only, born in lawful wedlock, or did he intend to describe the children who at the termination of the life estate and by the law then in force answered the description of children?

(1) I hold that the latter construction is correct and that the daughter of Charles F. Hoagland, the life tenant, is entitled to the entire fund. Support for this conclusion is found in the language of the will, as well as in the interpretation of the section of the Domestic Relations Law. The remainder was clearly contingent. (*Teed* v. *Morton*, 60 N. Y. 502; *Matter of Buechner*, 226 id. 440.) The event which determined the ultimate remaindermen was the death of the life tenant. This took place on December 11, 1923. The will directed that upon the death of Charles F. Hoagland " leaving a child or children," the principal was to be paid to such child or children. His legitimatized daughter, therefore, became the designated remainderman.

(2) The language of section 24 of the Domestic Relations Law likewise sustains the right of the daughter to take this fund. That section was originally enacted by chapter 531 of the Laws of 1895,

and re-enacted by section 18 of chapter 272 of the Laws of 1896, known as the Domestic Relations Law of 1896. In 1899 the section was amended by chapter 725 of the Laws of that year, and as amended reads as follows: "An illegitimate child whose parents have heretofore intermarried, or shall hereafter intermarry, shall thereby become legitimatized and shall become legitimate for all purposes, entitled to all the rights and privileges of a legitimate child; but an estate or an interest vested *or trust created* before the marriage of the parents of such child shall not be divested or affected by reason of such child being legitimatized." (The italicized matter was added by this amendment.) The latter statute was in force and effect at the time of the execution of the will by the testator, November 16, 1903. He died January 30, 1904. The daughter was born September 17, 1897. The parents of the daughter were married May 27, 1905. The section was thereafter repealed and added as section 19 by chapter 742 of the Laws of 1907. Since the statutory revision of 1909 the section has been in the same substantial form as section 24 of the present Domestic Relations Law.

The purpose of the section of the Domestic Relations Law is in harmony with the trend of modern thought. Judicial decisions and legislative enactments have sought to establish, wherever possible, the legal status of the illegitimate child after the marriage of its parents. Even in the absence of a statute, under the common-law rule, we invoke every presumption in favor of the validity of such a marriage with the primary purpose of legitimatizing the issue. In the interest of justice we close our eyes to a relationship between a man and a woman in order to protect the innocent child and its rights. We invoke the presumption of legitimacy and describe it as the strongest known in the law. The additional declaration by the Legislature contained in the section furnishes greater reason for a construction in favor of the child. The child becomes legitimate for all purposes and entitled to all the rights and privileges of legitimate children. The statute should be construed liberally. Except there be a positive legislative prohibition excluding the child from participation in a benefit, its rights should be sustained.

It will be noted that the statute provides that upon the marriage of the parents, the child shall thereby "become legitimate for all purposes and entitled to all the rights and privileges of legitimate children." Under the language of the will of the testator, read with the language of the statute in effect at the date of the termination of the trust and the vesting of the remainder, the daughter, as the only child, possessed all the rights of a legitimate child and answered the description as the sole beneficiary of the fund

in the testator's will. His intent is to be tested by the language he employed, and knowledge of the statute must be imputed to him. The child was born six years before the execution of the will. Whether the life tenant left a child surviving could only be determined by the facts and law existing at the life tenant's death. At that time, by the force of the statute, the daughter was the lawful child of the life tenant.

(3) It is claimed by the residuary legatees that the exceptions in the statute prevent the daughter from taking the remainder. This conclusion is not supported by the language of the statute. The Legislature directed, in the amended form of this section as enacted in 1899, that " an estate or interest vested or trust created " before the marriage of the parents of the child shall not be divested or effected by reason of such child being legitimatized. The statute of 1899 was in effect at the date of the marriage of the parents in 1905. The words " estate or interest vested " clearly refer to a *vested* remainder or other *vested* legal interest. A contingent interest was necessarily excluded from the exception. The words " trust created " plainly refer to the equitable or beneficial interest of a *cestui* in a trust, and not to a contingent remainder. In ascertaining the legislative intent, the decisions of the Court of Appeals prior to the enactment of the statute are to be considered and are conclusive upon the meaning of the word " trust." Both before and after the enactment of the statute in 1899 the word " trust," both in statutes and in testamentary instruments or deeds, has been limited to the legal title of the trustee and the equitable interest of the *cestui que trust*. (*Losey* v. *Stanley*, 147 N. Y. 560, decided Nov. 1895; *Matter of Tienken*, 131 id. 391; *Matter of Easterly*, 202 id. 466, 474, 475; *Embury* v. *Sheldon*, 68 id. 227, 235, decided in 1877.) These authorities have excluded the independent legal estate created for the remaindermen from the meaning of the word " trust." Such has been the construction of the word " trust " when used in the Real Property Law. (*Losey* v. *Stanley*, supra.) The Legislature, therefore, intended by the words " trust created " to prevent a legitimatized child from participating in a life interest in a trust either with other lawful children or to the exclusion of other beneficiaries having an existing interest in the trust. None of the statutory exceptions, however, forbid the participation of a legitimatized child in a contingent remainder like that created in the will here.

(4) The authorities relied upon by the residuary legatees have no application to the language of the present will. In those cases the intent of the testator to exclude a legitimatized child appears with reasonable certainty from the context of the will. Thus in

*Central Trust Company* v. *Skillin* (154 App. Div. 227), where the legitimatized children were debarred from participation in the remainder, the testator directed payment of the remainder to the life tenant's, his son's, "lawful issue." The opinion of the court pointed out that by the word "lawful" the testator necessarily excluded unlawful or illegitimate children. Moreover, in the *Skillin* case the illegitimate children were born after the death of the testator and, as the court pointed out, the testator could not possibly have had them in mind as remaindermen under the language employed by him in his will. Furthermore, there was no general statute in existence at the time of the execution of the will under which, even had such children been in existence, they could have been legitimatized. It is interesting to note also in that case that the court stated: " It is not necessary now to decide whether any different result would have followed if testator's will had been published subsequent to the birth of these [illegitimate] children and the enactment of the statute." In the present case both of these contingencies occurred, for the will was executed long after the statute of 1899 and after the birth of the child. Likewise in *United States Trust Company* v. *Maxwell* (26 Misc. 276) the phrase employed in the will was "lawful issue then living" which the court held necessarily excluded an illegitimate child. On the other hand, support for my conclusion can be found in the comprehensive opinion of Mr. Justice Laughlin in *Smith* v. *Lansing* (24 Misc. 566) where the gift of the contingent remainder was to "all my grandchildren then living." It was held there that justice required that a legitimatized child of a daughter of the decedent should be permitted to share in the residuary fund, that the determining event was the death of the life tenant and the membership of the class of grandchildren was to be determined as of that date. The opinion pointed out that upon that occurrence the legitimatized grandchild possessed, under the statute, all the rights and privileges of the legitimate grandchildren, and was, therefore, included within the class described by the will. In a recent case (*Hewitt* v. *Farmers Loan & Trust Co.*) in the Supreme Court, New York county, a somewhat similar question arose over the provisions of the will of Peter Cooper. There the gift was to the issue of certain descendents " in the share in which they would inherit the same from him under the laws of the State of New York." The learned referee in that case upheld the right of a legitimatized child to take the gift over under this language. He based his conclusion upon the fact that at the time the contingent remainder fell in the law of our State recognized the rights of a legitimatized child to participate as a member of the class of issue.

Misc. 381]     Surrogate's Court, New York County, June, 1925.

He likewise held that the word " trust," as used in the statute, was limited to rights existing during the term of the trust and had no relation to rights which accrued in the remainder after the termination of the trust.

Submit decree directing the payment of the trust fund in dispute here to the daughter of Charles L. Hoagland.