In the Matter of the Estate of EMANUEL B. SHEFFER, Deceased.

Surrogate's Court, Kings County, March 13, 1931.

Cullen & Dykman, for the petitioner.

Thomas F. Tevlin, for the respondents.

Simpson, Thacher & Bartlett, for Homer F. Sheffer.

WINGATE, S. Whereas it has frequently been held that the words " lawful issue " when used in a testamentary direction mean no more than " descendants " (Matter of Disney, 118 App. Div. 378, 380; N. Y. Life Ins. & Trust Co. v. Viele, 161 N. Y. 11, 19; Chwatal v. Schreiner, 148 id. 683, 688), it must be apparent that such a definition can be adopted only by a deletion of the qualifying adjective, which is a dangerous course to pursue. (Matter of Kirkman, 134 Misc. 527, 528.) It is primary that all words in a document are presumed to have been inserted with the definite intent that their meaning should be given effect. (Fleischman v. Furgueson, 223 N. Y. 235, 239.) Since, therefore, the connotation of the word " issue " when standing alone, was uniformly construed at common law to be " descendants " (Matter of Mann, 138 Misc. 42, 47 et seq. and cases cited), the addition of the qualifying adjective should properly be considered as limiting the noun employed, to the extent of the meaning of the added word. Following the decision of the Court of Appeals in Olmsted v. Olmsted (190 N. Y. 458), it can scarcely be successfully controverted that " lawful " when conjoined with " descendants " means those persons who possess the rights usually granted in civilized communities to the recognized offspring of a couple whose mutual relations conform to the standards set up by the laws of the particular jurisdiction for the constitution of a family; that is, " legitimate " descendants.

One of the essential attributes of every sovereign State is its power to regulate the status and rights of each of its inhabitants. (Miller v. Miller, 91 N. Y. 315.) This authority is universally recognized in all civilized countries. In the United States, however, the provisions of the several State and Federal Constitutions partially limit this right in certain particulars where its exercise would result in depriving other persons of validly vested property rights. (Matter of Barringer, 29 Misc. 457, 462.)

At common law it is unquestionable that the only issue who

were considered " lawful " or legitimate were those who were the children of a legally recognized subsisting marriage. (*Central Trust Co.* v. *Skillin*, 154 App. Div. 227, 230.) For many years, however, an increasingly potent policy has been noticeable to eliminate this strict and frequently unjust discrimination against individuals to whom no personal fault could be attributed. In many jurisdictions, including our own, children of individuals who, while unmarried at the time of their birth, were subsequently joined as husband and wife in a manner recognized by law, have been placed on a substantial parity with children born after a marriage had been legally effected.

In this State the first statute of such a nature is found in section 1 of chapter 531 of the Laws of 1895 which became effective on May third of that year. As thereby indicated, the policy of the State became one of recognition of all children born of an irregular union, provided the parents later married. The law then passed has, with immaterial changes, continued in force to the present day and is now incorporated in section 24 of the Domestic Relations Law. As it stood on December 24, 1901, when the will at bar was executed, the law read:

" An illegitimate child whose parents have heretofore intermarried, or shall hereafter intermarry, shall thereby become legitimatized and shall become legitimate for all purposes, entitled to all the rights and privileges of a legitimate child; but an estate or an interest vested or trust created before the marriage of the parents of such child shall not be divested or affected by reason of such child being legitimatized." (Dom. Rel. Law of 1896 [Laws of 1896, chap: 272], § 18, as amd. by Laws of 1899, chap. 725.)

It is obvious that the natural construction of this statute was to make the children affected legitimate for all purposes and to place them in exactly the same position as if their parents had been married at their birth, in so far as this could be accomplished without constitutional violation. (*Summo* v. *Snare & Triest Co.,* 166 App. Div. 425, 431; *Wolf* v. *Wolf*, 109 Misc. 366, 369; affd., 191 App. Div. 925; *Houle* v. *Houle*, 100 Misc. 28, 31.)

The question presented in the case at bar is as to whether two children born out of lawful wedlock whose parents subsequently married, are legitimate for the purpose of inheriting certain portions of the property of this testator. As stated, the will in question was executed on December 24, 1901. It was admitted to probate on July twenty-fifth of the following year. By its " seventh " item a trust was created for the benefit of the testator's widow with remainders in certain percentages to his four children or their

"lawful issue." One of testator's children married in the year 1890, but about thirteen years later, while such marriage was still in force, commenced an illicit cohabitation with another woman by whom these two children were born to him. Sometime after their birth the first wife divorced him and he thereafter married the mother of the children. His first marriage was childless. He died in 1914. The trust for the widow terminated on her death on August 7, 1930, and the question here litigated is as to whether the two children born prior to the second marriage are entitled to take the remainder interests to which their father would have been entitled under the will had he survived the life tenant.

It is, of course, fundamental that the office of the court in the construction of a will is to determine what the testator himself actually meant at the time the will was drawn by the language which he then employed. (*Matter of Lilienthal*, 139 Misc. 225, and cases cited.) It is equally fundamental that the words of the testator must be construed in reference to the law which existed at the time they were used, and this applies as well to statute as to general law. (*Gilliam* v. *Guaranty Trust Co.*, 186 N. Y. 127, 138; *Farmers' Loan & Trust Co.* v. *Winthrop*, 207 App. Div. 356, 371; modified, 238 N. Y. 477; *City of Buffalo* v. *Hawks*, 226 App. Div. 480, 484, 485; affd., 251 N. Y. 588; *Ralston* v. *Fifth Avenue Bond & Mortgage Company*, 130 Misc. 556, 558; affd., 223 App. Div. 863; *Matter of Kelly*, 134 Misc. 399, 401; *Matter of Canfield*, 136 id. 551, 554; *Matter of Wilkening*, 137 id. 451, 454.) As was said by the Appellate Division of this department in *Central Trust Co.* v. *Skillin* (154 App. Div. 227, 232): "In discovering the intent of the testator a will should be construed in the light of the statutory enactments in view of which it must be supposed to have been made."

It is apparent that the purpose of the statute was to remedy the serious wrong existing prior to its enactment of the imposition upon entirely innocent persons of the stigma of bastardy. Since earliest times statutes of this nature have been accorded extremely liberal consideration. (See *Brower* v. *Bowers*, 1 Abb. Ct. App. Dec. 214, 223.) The cogent considerations affecting this phase of the subject can hardly be better expressed than is done in the characteristically lucid and convincing exposition of Surrogate FOLEY of New York county in *Matter of Hoagland* (125 Misc. 376, at p. 378). The learned surrogate there says: "The purpose of the section of the Domestic Relations Law is in harmony with the trend of modern thought. Judicial decisions and legislative enactments have sought to establish, wherever possible, the legal status of the illegitimate child after the marriage of its parents. Even

in the absence of a statute, under the common-law rule, we invoke every presumption in favor of the validity of such a marriage with the primary purpose of legitimatizing the issue. In the interest of justice we close our eyes to a relationship between a man and a woman in order to protect the innocent child and its rights. We invoke the presumption of legitimacy and describe it as the strongest known in the law. The additional declaration by the Legislature contained in the section furnishes greater reason for a construction in favor of the child. The child becomes legitimate for all purposes and entitled to all the rights and privileges of legitimate children. The statute should be construed liberally. Except there be a positive legislative prohibition excluding the child from participation in a benefit, its rights should be sustained."

Whether or not this statute, which was in existence at the time the will was drawn and was, therefore, necessarily within the contemplation of the testator, can be given effect in this case depends on whether the gifts come within the recognized exceptions set forth in the act. Considering the exceptions as limiting the effect of the statute only to the extent that a failure to limit would render the statute unconstitutional, which is their apparent purpose, it is obvious that the remainder rights here in question are not vested in a manner which would render their diversion to others unconstitutional as a deprivation of property without due process of law. (*Matter of Terwilliger*, 135 Misc. 170, 184, and cases cited; affd., 230 App. Div. 763; leave to appeal to the Court of Appeals denied by the Appellate Division, 230 App. Div. 846, and by Court of Appeals.)

It is equally true that its operation is not inhibited by the exception respecting a " trust created," since, as pointed out by Surrogate FOLEY in *Matter of Hoagland* (125 Misc. 376, 379): " The words ' trust created ' plainly refer to the equitable or beneficial interest of a *cestui* in a trust, and not to a contingent remainder. In ascertaining the legislative intent, the decisions of the Court of Appeals prior to the enactment of the statute are to be considered and are conclusive upon the meaning of the word ' trust.' Both before and after the enactment of the statute in 1899 the word ' trust,' both in statutes and in testamentary instruments or deeds, has been limited to the legal title of the trustee and the equitable interest of the *cestui que trust*. (*Losey* v. *Stanley*, 147 N. Y. 560, decided Nov. 1895; *Matter of Tienken*, 131 id. 391; *Matter of Easterly*, 202 id. 466, 474, 475; *Embury* v. *Sheldon*, 68 id. 227, 235, decided in 1877.) These authorities have excluded the independent legal estate created for the remaindermen from the meaning of the word ' trust.' Such has been the

construction of the word ' trust ' when used in the Real Property Law. (*Losey* v. *Stanley, supra.*) The Legislature, therefore, intended by the words ' trust created ' to prevent a legitimatized child from participating in a life interest in a trust either with other lawful children or to the exclusion of other beneficiaries having an existing interest in the trust. None of the statutory exceptions, however, forbid the participation of a legitimatized child in a contingent remainder like that created in the will here."

An additional consideration requiring a determination that these children are entitled to receive their deceased father's interest under the will at bar, exists in the fact that the remainder gifts in question were gifts to a class, the individuals composing which can, on primary principles, be ascertained only at the time when distribution is to take place. (*Matter of Ackerman*, 137 Misc. 910, 915, and cases cited; *Smith* v. *Lansing*, 24 id. 566.)

The cases of *Central Trust Co.* v. *Skillin* (154 App. Div. 227) and *United States Trust Co.* v. *Maxwell* (26 Misc. 276), cited by the respondents as requiring a result adverse to the children, are obviously authorities for no such thing. In the *Central Trust Co.* case the will was executed on February 19, 1872, long prior to the enactment of the series of statutes here controlling. The court, with unexceptionable soundness, determined that the nomenclature employed by the testator must be decided by the law existing at the time of the execution of the will, in consequence of which he could not be held to have contemplated the radical change in the law effected by the statute of 1895. The facts in the *United States Trust Co.* case were even stronger. That will was drawn in 1886, immediately after the testator had learned of an illicit union between his son and a certain woman, and the court held that the deliberate use of the phrase " lawful issue " in view of the then existing law and of the testator's knowledge of the facts, unquestionably demonstrated his intention to disinherit the issue of the meretricious relation, concerning which he had just been informed.

It follows that the objections to the account herein must be overruled and it must be determined that the children of Walter are entitled to receive the remainder interests under the will to which their father would have been entitled had he survived the life tenant.

Proceed accordingly.