In the Matter of Proving the Last Will and Testament and Codicil Thereto of TIMOTHY W. KELLY, Late of the County of Kilkenny, Irish Free State, Deceased.

In the Matter of the Application for Ancillary Letters on the Last Will and Testament of TIMOTHY W. KELLY, Deceased.

Surrogate's Court, Kings County, June 18, 1929.

*Charles Kean,* for Thomas Hogan.

*James H. Gilvarry,* for Patrick Dunne, Laurence Cleary and Thomas Cleary, heirs at law and next of kin.

*Dunn & Stiles,* for Mary Cleary, a residuary legatee.

*Paul Jones,* for James H. Gilvarry, petitioner for ancillary letters.

WINGATE, S. Timothy W. Kelly, the testator in this proceeding, died in the city of New York on June 6, 1927. At such time he was temporarily sojourning in this country, being domiciled in Upper Tullaroan, county of Kilkenny, Irish Free State. He left a will dated June 17, 1925, and a codicil thereto dated December 31, 1925. The disposition of his property effected thereby was elaborate and he appointed as executors James Dillon of Upper Tullaroan, Irish Free State, and Thomas Hogan who is described in the will as " at present of 29 Fuller Place, Brooklyn, New York." The estate is substantial, and appears to consist of personal property located in Ireland and various localities in the United States, including Kings county, State of New York, and real estate located in Ireland and also in Kings county.

According to the certified copy of the probate proceedings, recorded in the office of this court on March 7, 1928, James Dillon, the Irish executor, offered this will for probate in the High Court of Justice (Probate) at Kilkenny, and it was there proved on September 9, 1927. Letters testamentary were issued thereon which recite: " That the administration of the Personal estate of said deceased was granted by the aforesaid Court to James Dillon of Upper Tullaroan in the County of Kilkenny, Senator and Farmer, one of the Executors named in said Will, he having been first sworn faithfully to administer the same. Power being reserved of making a like Grant to Thomas Hogan the other Executor named in said Will when he should apply for the same."

Proceedings were thereafter instituted by Thomas Hogan, the American executor named in the will, for its independent probate in this country, and to that end a duly authenticated copy of the will was filed in this court and a commission issued to take the testimony of the subscribing witnesses. This commission has been executed and returned and is now on file, and amply demonstrates the due execution of the will and codicil in compliance with our laws.

That this action by Hogan was accomplished with the knowledge

and approval of Dillon, the Irish executor, is shown by a waiver and consent to the probate of the will, duly executed by the latter, and authenticated by him, on file in this court.

This commission appears to have been received in this court in the late fall of 1928, but no further steps seem to have been taken in the matter until April 2, 1929, when a petition was filed by one James H. Gilvarry, praying the issuance to him of ancillary letters of administration with the will annexed as the sole designee of Dillon, the Irish executor.

This application has now been consolidated with the prior application for independent probate by Hogan, and the question of the conflicting claims to local administration of the estate is now before the court for determination.

In view of the controversy which has arisen between the executors, the intent of testator, as disclosed by his will, is a most important consideration and should be given controlling effect, unless such result is inhibited by some positive rule of law. (*Matter of Buttner*, 243 N. Y. 1; *Matter of Rooker*, 248 id. 361; *Matter of Hughes*, 225 App. Div. 29; *Matter of Smathers*, 133 Misc. 812.)

In the instant case testator was seized and possessed of a sizeable estate, part of it located in Europe and part in America. He chose as executors, one individual resident there, one here. A single executor in either locality would be handicapped in his labors by his remoteness from the other scene of action. The testator is presumed to have known the law, to the effect that if he named only one executor, such appointee would, in the usual course, exercise his powers in the distant locality by designation of some person there resident to act for him. Therefore, his nomination of an individual in each locality is susceptible of only one inference: that he preferred himself to name the individual who should attend to his affairs in each locality when he could no longer do so himself, rather than delegate such power of designation to another. It is not a reasonable assumption that he expected both executors to act in both places so remotely situated from each other. Rather, he intended Dillon to be his executor in respect to Irish and Hogan as to American affairs. Naturally their duties would, in some limited measure, overlap, but in far larger measure they would be substantially independent.

It, therefore, follows that were the court to hold that Dillon's designee was entitled to ancillary letters, it would be a direct subversion of testator's intention. The alternative is to grant Hogan's petition for an independent probate and as the jurisdic-

tion of the court in this regard is questioned, the matter will be examined.

At the outset it may be noted that the Irish letters testamentary grant administration as to personal property only, whereas the will purports to deal with realty as well, and, indeed, the chief basis for any assumption of jurisdiction here, either for probate or administration, is the fact that real property is located in this country. In other words, the Irish court did not attempt or purport to give the executors any right or power to do anything in respect to testator's real estate, having, no doubt, so far as the American realty was concerned, the natural and proper reluctance which all courts feel to exercising authority in this regard over real property located in a foreign jurisdiction. Even had such power been granted, it would have been inoperative for the purpose of vesting any power, in contravention of our laws, over real property located in this jurisdiction.

Before entering into a consideration of the power of the court to grant Hogan's application, the question of the statutory propriety of issuing ancillary letters to Gilvarry, Dillon's designee, will be considered. This question is governed by sections 159, 160 and 161 of the Surrogate's Court Act.

By the express provisions of section 159, the issuance of such ancillary letters is limited to " a will of personal property." The Legislature has not left us in doubt as to its intention in this regard, for section 314, subdivision 13, gives the following definition: " The expression, ' personal property,' signifies every kind of property which survives a decedent, other than real property as defined in this subdivision * * *," while real property is defined as including " every estate, interest, and right, legal or equitable, in lands, tenements, or hereditaments, except those which are determined or extinguished by the death of a person seized or possessed thereof, or in any manner entitled thereto, and except those which are declared by law to be assets."

No provision respecting ancillary letters is made for a will of real property, or affecting real property.

The only conclusive method of determining whether the will in the instant case is one relating to real property is by a reference to the document itself. An examination of this paper demonstrates that the greater portion of the estate in Ireland, as well as in America, consisted of real property, and that so far as concerned the latter, there was an express direction to the executors and trustees that it " be sold by them and converted into money " and the proceeds divided among a considerable number of residuary legatees.

The extended argument by counsel for the applicant for ancillary letters to the effect that no estate in the American realty passes to the executors, entirely misses the point involved in the question of whether or not the Legislature has authorized the decree which he prays; the *manner* in which the will deals with testator's real estate is quite immaterial. If it deals with real estate in any way, it is not a will which deals only with personal property, defined as possessions " other than real property " in subdivision 13 of section 314 of the Surrogate's Court Act, and, consequently, section 159 gives no authority for the grant of ancillary letters thereon. Section 44 of the Decedent Estate Law (as amd. by Laws of 1926, chap. 218) has no application in this connection, relating merely to the devolution of real property. The Legislature by section 159, particularly when read in conjunction with sections 232 *et seq.*, has clearly manifested its decision that the power over and management of real property shall not be intrusted to ancillary executors or administrators, and even if a court were disposed to disagree with its determination respecting this question of public policy, which this court is not, it would be powerless to make such disagreement effective.

None of the cases cited by counsel for the ancillary applicant conflict with the views herein expressed. With the exception of *Spratt* v. *Syms* (104 App. Div. 232), which will be referred to later, all relate solely to wills of personal property which have no relation to the question here considered.

There is, however, a further cogent reason for denying the application for the issuance of ancillary letters to Gilvarry. Section 161 of the Surrogate's Court Act provides in part as follows: " Where the will specially appoints one or more persons as the executor or executors thereof, with respect to personal property situated within the State, the ancillary letters testamentary must be directed to the person or persons so appointed, or to those who are competent to act and who qualify."

The remainder of the section is all concerned with what must happen if such person or persons entitled to priority fail. It will be noted that the persons entitled to such precedence are those appointed in the will, who, obviously, may or may not be those appointed executors on the foreign probate. In the instant case, therefore, if the issuance of ancillary letters were proper, they " *must be* directed " to Hogan and Dillon, or to the one of them who was competent and willing to qualify; and only upon the failure of both so to qualify could there be any possibility for an issuance to a designee.

Since the foregoing considerations amply dispose of the petition

of Gilvarry for the issuance of ancillary letters to him, it is unnecessary to consider the question of whether Hogan's qualification as one of the Irish executors after the date of Dillon's designation of Gilvarry, when coupled with Hogan's active opposition to the appointment of the latter, would make the designation ineffective in view of the provisions of section 161 of the Surrogate's Court Act, requiring all qualified executors to join in such a designation.

It being, therefore, determined that the petition of Gilvarry for ancillary letters must be denied, the question of original probate of the will and codicil on Hogan's petition remains for consideration.

In this connection section 45 of the Surrogate's Court Act is decisive. So far as here pertinent, this reads:

" The surrogate's court of each county has jurisdiction, exclusive of every other surrogate's court, to take the proof of a will, and to grant letters testamentary thereupon, or to grant letters of administration, as the case requires, in either of the following cases:
" * * *

" 4. Where the decedent was not, at the time of his death, a resident of the state, and a petition for probate of his will, or for a grant of letters of administration, under subdivision two or three of this section, has not been filed in any surrogate's court; but real property of the decedent, to which the will relates, or which is subject to disposition under article thirteen of this act, is situated within that county, and no other."

According to the record in this proceeding, all of the jurisdictional prerequisites above specified are complied with in the instant case.

It has been duly made to appear that the original will is on file in the Probate Office in Ireland, from which it cannot be removed (Surrogate's Court Act, § 150), and an exemplified copy thereof has been filed in this court. A petition has been filed for its probate by one of the executors named therein (Surrogate's Court Act, § 139), and jurisdiction has been obtained over all necessary parties (Surrogate's Court Act, § 140). A commission has been issued out of this court, under which the testimony of the subscribing witnesses has been taken and the execution of the will and codicil duly proved, which commission has been returned to this court. (Surrogate's Court Act, § 141.) In other words, the procedure here adopted is precisely that indicated in the case of *Spratt* v. *Syms* (104 App. Div. 232) as necessary and proper where a foreign testator leaves real property in this State.

It follows, therefore, that since " it appears to the surrogate that the will was duly executed; and that the testator, at the time of executing it, was in all respects competent to make a will and not under restraint; it *must be admitted to probate* as a will valid

to pass real property, or personal property, * * *." (Surrogate's Court Act, § 144.)

The will and codicil will, therefore, be so admitted, and letters testamentary thereon will be issued to Thomas Hogan upon his duly qualifying as executor. In the event that the disability of James Dillon shall be removed before the execution of the provisions of the will and codicil are completed, he shall be entitled, on petition being filed setting forth the facts, to supplementary letters testamentary in accordance with the provisions of section 156 of the Surrogate's Court Act.

Submit decision and decree, on notice, in accordance with this opinion.