In the Matter of the Estate of IONE MAY SPEARS, Deceased.

Surrogate's Court, Kings County, April 17, 1934.

*Wrenn & Schmid*, for the Kings County Trust Company, executor.

*Merrill, Rogers, Gifford & Woody*, for C. Lansing Hays, executor.

*Edward A. Ingraham*, for the Methodist Episcopal Hospital.

*Lewis C. Grover*, for Orphan Asylum Society of the City of Brooklyn.

*Howard Carter*, for Elizabeth Spears, ancillary executrix.

*C. W. Webber*, for the Brooklyn Public Library.

*De Forest, Cullen & Elder*, for the Orphan Asylum Society of City of New York.

*Root, Clark, Buckner & Ballantine*, for Mary R. Parker.

*Stewart & Shearer*, for the Trustees of Princeton University.

*Cullen & Dykman*, for the Brooklyn Society for the Prevention of Cruelty to Children and another.

*Herbert McKennis*, special guardian.

WINGATE, S. Four questions are propounded in this special proceeding for the construction of the will of this decedent. The first concerns testatrix's intention respecting division of her own estate and the residuary estate of another over which she held a power of appointment between named charitable and non-charitable beneficiaries; two relate to the identity of named legatees; and the last raises the question as to whether the dealings of the tes-

tatrix with the subject-matter of a specific gift resulted in its ademption.

By the twenty-fifth item of the will of Dick S. Ramsey a trust was created for the testatrix's life with remainder as she might by will appoint, with a substitutional gift to her statutory distributees in the event of her failure to exercise this power.

Testatrix left a will, executed in October, 1925, and two codicils dated respectively April 19 and November 29, 1929, all of which have been admitted to probate. By the first item of the will she left certain specified real and personal property to " the Orphan Asylum Association of New York; " and in the second bequeathed to her brother " the shares of stock of the Brooklyn City Railway Company which my mother left to us upon her death, about the year 1912, together with any accretions thereto by way of stock dividends upon the shares that I received from my mother." The remaining dispositive items of the will gave a considerable number of legacies and various specific articles to various individual legatees and disposed of the residue to Princeton University.

The first codicil gave further general legacies to individuals, the beneficiaries being in some cases persons named in the will. Its final item read as follows:

" *Sixth.* By my Will I have given to the Orphan Asylum Association of New York and to Princeton University substantial gifts. I do not want to give them more than one-half of my distributive estate. And after the amount of my estate is determined and all my debts and the expenses of administration are determined, I give to the specific money legatees mentioned in my Will and this Codicil thereto, such additional sums as may be necessary to prevent the said Orphan Asylum Association of New York and Princeton University from receiving more than one-half of my net distributable estate and such excess shall be divided among such specific money legatees in the same proportion in which such specific money legatees may be entitled to legacies by the terms of my will and of this Codicil thereto."

The second codicil gave additional individual legacies, and continued:

" *Third.* By my Will I gave to Princeton University my residuary estate. It is my wish that Princeton University shall not receive in excess of the sum of * * * $250,000 from my estate, and I confirm and give to said university a gift in said amount of * * * $250,000, subject, however, to reduction from such amount as in my Codicil and as hereinafter provided, if the gift to Princeton University and to the Orphan Asylum Association shall exceed one-half of my estate. It is further my wish that all gifts

to charitable, educational, hospital and eleemosynary institutions shall amount to but shall not exceed one-half of my net distributable estate, and I give, devise and bequeath to the beneficiaries hereinafter named such part of my estate, which together with the property gift to the Orphan Asylum Association of New York and to Princeton University, shall amount to one-half of my distributable estate, and I include in and as part of my estate for this purpose any property over which I shall have right of appointment by the Last Will and Testament of Dick S. Ramsay, my foster brother, hereby exercising such right of appointment in favor of the beneficiaries named, that is to say, I direct my executors and Trustees to divide among the following named corporations and in the stated percentages the balance of one-half my distributable estate (after deducting from such one-half the gifts to Orphan Asylum Association of New York and Princeton University), including in the computation of the amount of my distributable estate any amounts receivable from the estate of Dick S. Ramsey over which I have power of distribution, that is,"

The following eight lettered subdivisions give:

(a) Five per cent to St. Christopher's Hospital.

(b) Five per cent to Methodist Episcopal Hospital.

(c) Twenty per cent to " Brooklyn Industrial Association and Home for Destitute Children."

(d) Five per cent to Brooklyn Home for Aged Colored People.

(e) Fifty per cent to Brooklyn Institute of Arts and Sciences.

(f) Five per cent to Brooklyn Public Library.

(g) Five per cent to Polytechnic Preparatory Country Day School.

(h) Five per cent to Brooklyn Society for the Prevention of Cruelty to Children.

The fourth item of this codicil provided that the total of all charitable gifts should not exceed " one-half of my distributable estate," the language in this regard being substantially similar to the provision of item " sixth " of the first codicil. By the " fifth " the residue, including lapsed legacies, was given proportionately to the specific money legatees.

It has been represented to the court that the personal estate of this testatrix amounts to approximately $550,000 and that the portion of the Ramsey estate over which she has exercised a power of appointment aggregates $1,200,000.

All parties to the proceeding, with the exception of the Brooklyn Public Library, are agreed that the terms of these instruments evince a testamentary intent that the property personally belonging to the decedent and that over which she possessed a power of

appointment is to be treated as a single entity, one-half in value being primarily given to individual legatees and the other half to charities, with the gifts to Princeton and the Orphan Asylum Association receiving a priority in the second group to the extent of $250,000, and the real and personal property indicated in the first item of the will, respectively. With this construction the court is in agreement.

The interesting argument to the contrary on behalf of the library is primarily erected upon the fallacious premise that by her will and first codicil the testatrix did not exercise the power of appointment granted her by the Ramsey will. It is entirely true that it was not until the execution of the second codicil that she did so in express terms, but the existence of the power coupled with a general testamentary disposition which did not expressly evince an intent that the provisions made should not embrace the property over which the power was possessed, as effectually made disposition thereof as if it were expressly given. (Pers. Prop. Law, § 18; Real Prop. Law, § 176; *Lockwood* v. *Mildeberger*, 159 N. Y. 181, 186; *Hirsch* v. *Bucki*, 162 App. Div. 659, 666–668; *Speir* v. *Benvenuti*, 197 id. 209, 211, 212; *Matter of Mann*, 138 Misc. 42, 45; *Matter of Wickham*, 139 id. 729, 731; *Matter of Marsland*, 142 id. 230, 233; *Matter of Burling*, 148 id. 835, 842.)

The argument of this minor charitable legatee, while admitting testatrix's obvious wish that Princeton University should benefit to the extent of $250,000, and that it was one of her two " pet " charities, seeks to limit it to a participation in testatrix's individual estate to the exclusion of the appointed property, laying stress on the language of the codicil that the directed payment is " from my estate." This is an excessively narrow and legalistic construction on the testamentary documents as a whole and is admittedly in contravention of testatrix's obvious wish as demonstrated by the series of her testamentary expressions. It is further markedly untenable in view of the expression of the testatrix in the same item: " I include in and as part of my estate for this purpose any property over which I shall have right of appointment."

On the main question of interpretation, therefore, the court determines that the personal estate of the testatrix and that portion of the Ramsey estate over which she possessed the power of appointment are to be considered as a single entity, one-half of which is dedicated to the individual legatees named in the will and the other to the corporate beneficiaries. From the first half shall be paid first the various specific bequests and the designated general sums to the individual legatees who were living at testatrix's decease, then the balance of the first half is to be paid *pro rata* to the same

individuals and finally the two lapsed legacies are to be paid to them also. From the second one-half shall be paid, first, the specific bequest and devise to the orphan asylum and to Princeton University and the overplus distributed among the other charitable legatees in the percentages named in the will. The marshalling of the assets of the two estates may be conveniently effected by dividing each into halves, one dedicated to the non-charitable legatees and the other to the charities, and making distribution from each accordingly.

From the evidence adduced before the court it is satisfied that the gift to " Orphan Asylum Association of New York " is properly payable to " Orphan Asylum Society of the City of Brooklyn," and that the charity intended by the gift in subdivision " (c) " of the third item of the second codicil is " Brooklyn Home for Children."

The testamentary intent in the second item of the will is dominant to the effect that testatrix wished her brother to receive the Brooklyn City railway securities which had come to her from their mother in the form in which they existed at the time of her death. In view of this obvious purpose and the testimony respecting the manner of the merger of this company into the present corporate organization, the court is of the opinion that the estate of the legatee is entitled to receive the substituted securities.

Proceed accordingly.