In the Matter of the Estate of MARIE FRANCOISE KULKER RENARD, Deceased.

Surrogate's Court, New York County, October 31, 1935.

*Stuart G. Gibboney* [*Morgan J. O'Brien, 2d,* and *Maurice Leon* of counsel], petitioner, in person.

*Coudert Brothers* [*Thomas W. Kelly* of counsel], for the respondents.

FOLEY, S. This is an application for ancillary letters. It is undisputed that Mme. Renard died a resident of and domiciled in the Republic of France. She was the widow of Michael Winburn, in whose estate litigation arose in this court over the construction of

his will. By decision of the Court of Appeals, intestacy was found as to a large part of the property left by him (*Matter of Winburn,* 265 N. Y. 366). It is alleged in the present proceeding that the share of the intestate property to which the decedent, as Mr. Winburn's widow, succeeded approximates $400,000. Shortly after Mr. Winburn's death his widow married a French government official. Within a brief period after her remarriage she was killed in an aviation accident. It is undisputed that her will was duly admitted to probate in France. A contest arises, however, as to the person or persons entitled to ancillary letters.

Claim is made, on the one hand, by Stuart G. Gibboney, who represented the former Mrs. Winburn in the litigation in New York State over her husband's estate. His claim is based upon his designation as attorney-in-fact by Henri Couturier, a notary in Paris and the official in whose office the will was filed and recorded. By a special order of the French court having jurisdiction of the estate, Courturier was appointed with authority to take over all funds and securities and property located in the United States of America and particularly the interest of Mme. Renard in the estate of Michael Winburn. Specific authority was given to Courturier to appoint an attorney-in-fact to effectually carry out his duties in collecting the assets in New York.

On the other hand, it is asserted by the attorneys-in-fact of the six heirs of Mme. Renard that ancillary letters may not issue to the designee of Couturier because he is not a person entitled to the possession and administration of the personal property of the decedent in the Republic of France, and that he, neither personally nor his attorney-in-fact, is entitled to ancillary letters.

The heirs of Mme. Renard were permitted by me to intervene in the proceeding under the authority of *Matter of Connell* (221 N. Y. 190). Messrs. Coudert Brothers, as counsel and attorneys-in-fact for these heirs, raise numerous questions as to the right of Mr. Gibboney to receive the ancillary letters. These contentions range from the irregularity of the order of the French court appointing Couturier as representative of the estate, to the construction of the will of the testatrix, the scope of the French statutes, and finally to the interpretation of sections of our own Surrogate's Court Act (Sections 159 and 161), which apply to the appointment of an ancillary representative and the issuance of ancillary letters. They assert that the heirs " are entitled to the possession of the personal property of the decedent " and that under the provisions of section 161 of the Surrogate's Court Act letters must issue to their designated attorney-in-fact.

All of these contentions of counsel for the heirs are overruled.

I specifically hold that Mr. Gibboney, as the designated substitute of the duly appointed French representative of the estate, is entitled to ancillary letters of administration with the will annexed. The regulations applying to the issuance of ancillary letters are mandatory upon the surrogate in so far as they provide for the priority of the persons entitled to be appointed as an ancillary representative. (*Baldwin* v. *Rice*, 183 N. Y. 55; *Matter of Cornell*, 267 id. 456, at p. 464.) A reservation of the right to determine whether the court has jurisdiction to issue such letters, and particularly whether the domicile of the decedent was in the foreign state or country or in this State, necessarily exists. (*Taylor* v. *Syme*, 162 N. Y. 513; *Matter of Connell*, 221 id. 190.) There is also discretion reserved to the surrogate as to whether he shall entertain the proceeding, under certain circumstances, thus where original letters are presented in New York from two foreign States based upon conflicting claims of domicile in each State. (*Matter of Cornell*, DELEHANTY, S., 149 Misc. 553; revd., 242 App. Div. 502; revd., and Surr. Ct. affd., 267 N. Y. 456.)

Under the language of section 161 of the Surrogate's Court Act, the order of priority of those entitled to letters where there is a will may be enumerated as follows:

(1) To one or more persons especially appointed by the will as executor in respect of personal property situated within the State.

(2) To the person (executor or administrator with the will annexed) named in the foreign letters or to the foreign representative appointed by equivalent authority where the law of the foreign country is lacking in procedure for the issuance of letters as we understand them.

(3) To a person designated by the foreign executor or administrator with the will annexed, by an instrument executed and proven in the manner required by the section.

(4) To a person " otherwise entitled to the possession of the personal property of the decedent."

(5) To a person designated by a person " otherwise entitled to the possession of the personal property of the decedent " by an instrument executed and proven in the manner provided by the section.

(6) Where all of the foregoing persons, after the service of citation, have refused to qualify or to make the designation, ancillary letters may issue to the persons named in section 133 of the Surrogate's Court Act.

Our statutes, however, recognize the testator's own selection of an executor or representative where there is a foreign will and our courts will appoint under ancillary letters the person designated by the testator. (1 Jessup-Redf. Surr. Cts. [8th ed.] p. 1051.) Per-

mission is likewise granted to the executors to nominate a person to act within this jurisdiction.

The question here is whether Mr. Gibboney, as the designee of the notary Couturier, is primarily entitled to letters. That question involves a consideration of the French law. Evidence has been taken before me on this question in the form of the testimony of an expert on the French law of estates, the specific statutes claimed to be applicable to the situation, the decisions of the French courts and treatises by French authors on the law of administration existent in that country. It appears from this testimony that where a " testamentary executor " is appointed by the will and is given seizin of a part or all of the personal property, he is entitled to administer the estate. (French Civil Code, arts. 1025 and 1026: " Traite Pratique de Droit Civil Francais," by Planiol and Ripert, ¶ 683, p. 728.) Seizin may be granted by the testator by implication or under the tenor of the will. (*Regnault* v. *Lafitte*, Dalloz Reports from 1891 by the Court of Appeal of Pau, France.)

Where there is no testamentary executor who is granted seizin, the universal legatee or universal legatees are entitled in certain cases to administer the estate. A universal legatee under the French Civil Code is defined as the person or persons entitled to take the whole of the estate. (French Civil Code, art. 1003.) A specific legatee or a pecuniary legatee as understood under our law is not included within the class of universal legatees. In other cases the heirs of the testator are entitled to administer the estate. (French Civil Code, art. 724.)

In *Matter of Harwood* (104 Misc. 653) Surrogate ROBERT LUDLOW FOWLER, in a learned opinion, comprehensively reviewed the application of the French law to the grant of ancillary letters. In that case he granted such letters to the universal legatee named in the will. His decision was affirmed by the appellate courts (*sub nom. Matter of Gay*, 188 App. Div. 918; affd., 227 N. Y. 607).

The status of the special representative of an estate appointed by the French court, similar to the status claimed by Henri Couturier here, does not appear to have been passed upon by any reported decision in New York State nor to have been encountered by the surrogates of New York county in the routine disposition of applications for ancillary administration.

The basis of the statutory authority of the French court in its appointment of Couturier as special representative of the estate by its order of May 29, 1935, is a grant of power contained in article 52 of the French law of July 13, 1925. It provides that in all cases " where an estate located in France and governed by the French Law comprises property personal or real of any nature whatsoever,

deposited or existing abroad, a special order granting possession of the same must be made upon petition, which order is rendered by the Presiding Justice of the Tribunal of First Instance in the jurisdiction where the estate is located. This order must contain the enumeration of all the property, personal or real, of which are composed the elements thus described of the transmitted inheritance.''

The words in this statute in the French language by which possession is given are '' *envoi en possession.*'' That form of special grant of authority is used in similar language in an order granting authority to a testamentary executor or universal legatee to enter into possession of the assets of an estate. (*Matter of Harwood, supra.*) The order of May 29, 1935, which has been submitted in evidence and duly authenticated, complies exactly with the French statute of 1925. It was made by the court upon the application of the two testamentary executors in France. It is carefully and accurately drawn in accordance with the statute. The grant cf authority to the special representative, Couturier, is exact and oomprehensive. Special authority is given to him to apply individually or through his attorney-in-fact for ancillary administration in this State. It specifically recites the existence of the interest of Mme. Renard in the estate of her former husband, Michael Winburn. Authority is granted to obtain the withdrawal of these funds located in America and to secure their return to France. Couturier, the person appointed as special representative, is required to account in the domiciliary jurisdiction in France for his acts. Authority was likewise granted to him to collect and obtain the transmission of other property left by the testatrix in French Equatorial Africa. Jurisdiction in the French court to make the order of May 29, 1935, is conceded by the expert called by the representative of the heirs in the proceeding in this court. Plainly the status of the special representative, Couturier, was the equivalent of an administrator with the will annexed whose rights are recognized by sections 159 and 161 of the Surrogate's Court Act.

The provisions of these sections were purposely drawn by the Legislature in broad terms because of the difficulty of describing the many forms of representatives of estates in foreign states and countries. The problem of the appointment of an ancillary representative in an estate of a resident of Great Britain and Ireland is relatively simple because the policy of administration of estates of those countries parallels that of the State of New York. Complications do arise in ascertaining the representative of the estate or the persons entitled to possession in the Latin countries, the other countries of Europe and of the other continents. In each case the special facts and the law of the country of domicile control.

Our statutes, however, plainly look to the substance of the status and to the powers of the foreign representative or person entitled to possession rather than to the technical name of the representative employed in the foreign country.

It is immaterial here that the statute of 1925 was primarily intended to protect the French government in the collection of death taxes upon foreign assets of the estate of one of its residents. The representative appointed is, none the less, the person entitled under the French law to administer the specific assets left in the estate.

The terms of the order of May 29, 1935, directly reserved the rights of the persons entitled to take as legatees or heirs in France. That order was validly made in the proper exercise of jurisdiction and is, therefore, not subject to nullification by this court. Although the heirs in this proceeding complain about its effect, they made no attack upon it in France and failed to appeal within the time fixed by the French law.

It has likewise been established that the heirs have made no attempt by any proceeding in France to assert their rights to the administration of the estate although a period of seven months has elapsed since the death of the testatrix. In the order of priority which has been set forth above, the foreign representative of the estate was entitled to ancillary letters of administration with the will annexed in precedence over the heirs. Entirely aside from the statute of 1925 it also appears that the testamentary executors in France obtained the designation of Couturier as their authorized representative to apply for ancillary letters here. These executors were granted seizin of the property not only by the tenor of the will, but also by its expressed terms. The proper designation by the executors of a substitute would have entitled the person designated to precedence over the heirs as the persons otherwise entitled to possession. An ordinary designation or nomination properly executed and proven would have been sufficient under the provisions of section 161 of the Surrogate's Court Act. The designation here was procured in more formal manner by an application by the executors to the foreign tribunal with the sanctity of a judicial decree appointing the representative.

Submit decree on notice granting ancillary letters of administration with the will annexed to Stuart G. Gibboney as the designated substitute of Henri Couturier who is determined to be the lawful foreign administrator with the will annexed of this estate.