In the Matter of the Estate of JOSEPH E. BROWN, Deceased.

Surrogate's Court, Kings County, September 22, 1938.

44

*Gould & Wilkie*, for the trustee, petitioner.

*Harrison & Hewitt*, for United States Trust Company of New York and Janet Booth Brown, executors of and trustees under the will of Joseph E. Brown, Jr.

*William Man Parkhurst*, special guardian for Janet Olcott Brown and Joseph Epes Brown, 3d, infant legatees.

WINGATE, S. In the present case the court is faced with the somewhat hazardous necessity of attempting to chart a safe course between the Scylla of *Fargo* v. *Squiers* (154 N. Y. 250) and the Charybdis of *Low* v. *Bankers Trust Co.* (270 id. 143).

The will of Joseph E. Brown, Sr., was probated in this court on January 31, 1918. By its " third " item, he directed the erection of trusts in the principal sums of $25,000 for each of his children, one of such being for the life benefit of his son, Joseph E. Brown, Jr. The will also contained the following provision: " and I hereby authorize and empower each of my surviving children  *  *  *  to dispose of the principal sum with all accumulations  *  *  *  by last will and testament, and I direct my said trustees to pay the same in accordance therewith. When and as each of my said children  *  *  *  shall die leaving issue him  *  *  *  surviving and without making testamentary disposition of said principal sum, the same  *  *  *  shall be paid to said issue absolutely."

At the time of the death of the son, in 1937, the principal value of this trust fund was $20,630.74. The value of his individual estate has not been disclosed.

The will of the son was probated in the Surrogate's Court of Mercer county, N. J., on June 7, 1937. By its terms he devised his real property to his widow and bequeathed to her his personal effects and the sum of $50,000 in trust. He then directed that all remaining property be erected into three equal trusts, the first of which was dedicated to his wife, and accorded her a general power of testamentary appointment over the principal and the other two, one for each of his children, Janet and Joseph, with remainders to their respective issue. This will did not expressly exercise the power of testamentary appointment accorded him by the will of his father, nor did it in any wise refer to it. Finally, in item " eighth " the testator directs that all State and Federal transfer or estate taxes " shall be paid and borne by my estate to the exoneration of all legatees and devisees hereunder."

The complication which has arisen in the determination of the mode of devolution or employment of the assets of the two estates arises from the fact that the second child of Joseph, Jr., was born on September 9, 1920, which was approximately thirty-two months after the death of Joseph E. Brown, Sr. If, therefore, any portion of the avails of the trust erected by the will of the latter for his son, and over which he received a power of testamentary appointment, were to be used for the erection of the trust for this afterborn child, an infringement of the provisions of section 11 of the Personal Property Law and section 42 of the Real Property Law would result. (*Genet* v. *Hunt*, 113 N. Y. 158, 171; *Hillen* v. *Iselin*, 144 id. 365, 378; *Harrison* v. *Harrison*, 36 id. 543, 544; *Purdy* v. *Hayt*, 92 id. 446, 456; *Greenland* v. *Waddell*, 116 id. 234, 244; *Cochrane* v. *Schell*, 140 id. 516, 539; *Matter of Lyons*, 154 Misc. 368, 369; affd., 271 N. Y. 204; *Matter of Wickham*, 139 Misc. 729, 731.)

It is, of course, thoroughly established that express reference to a testamentary power of appointment is unnecessary for the effective exercise thereof and that any will of the donee of the power which purports to direct the mode of devolution of all property of the testator will be effective to regulate the devolution of the property over which the power of appointment exists unless an affirmative intention to the contrary is discernible from the terms of the testamentary instrument. (Pers. Prop. Law, § 18; Real Prop. Law, § 176; *Lockwood* v. *Mildeberger*, 159 N. Y. 181, 186; *Hutton* v. *Benkard*, 92 id. 295, 301; *Guaranty Trust Co.* v. *Halsted*, 245 id. 447, 461; *Hirsch* v. *Bucki*, 162 App. Div. 659, 666, 668; *Speir* v. *Benvenuti*, 197 id. 209, 211, 212; *Matter of Spears*, 151 Misc. 181, 185.)

Since, therefore, the will of Joseph, Jr., produces the result of indiscriminate disposal of his own assets and of the principal of the trust erected by the will of his father, it would naturally follow that in so far, if at all, as the trust for the infant Joseph was necessary of erection from the avails of the latter, the direction would be invalid and incapable of effectuation.

If it were to be assumed that the property over which the power of appointment existed were to be applied ratably with that belonging to the son himself in the solution of the several benefits given by the will, it would follow, that a certain percentage thereof would be used in the solution of the initial trust gift to the widow and the balance would be attributable to the three trusts attempted to be erected for the widow and the two children. The employment of the appointed property in this manner for the widow and the elder child would be unexceptionable since they were persons in being at the death of the original testator, and only one of the two permissible lives measuring the period of restraint had been exhausted but the portion going into the trust for the child born subsequent to the death of the original testator would not be permissible of such use as this would accomplish an infringement of the statute measuring the period of restraint by lives in being at the original testator's death. It would then result that this invalid gift would devolve outright pursuant to the alternate direction of the will of Joseph, Sr., to the two children in equal shares. Such a procedure would obviously be grossly unfair to the afterborn child, depriving his trust of that portion of the appointed fund necessary to preserve equality with his more fortunate sister, and returning to him only one-half thereof as an outright benefit, while the other half thereof was given to the sister.

In an effort to avoid this discriminatory hardship, it has been suggested that the fund over which the power of appointment exists should be paid to the executors of the estate of the son for the purpose of defraying the costs and charges of administration and the estate taxes on his estate in exoneration of the obligations of his own property in this regard, leaving his own property free for use in solution of the several testamentary benefits given to the widow and children. This procedure is urged in spite of the express direction in his will that the taxes, at least, should be paid and borne "by *my* estate."

The thesis for this result is predicated upon the rule applied in *Fargo* v. *Squiers* (154 N. Y. 250), in which the assets of the estate of the testator and the property over which a power of appointment was possessed by him were marshaled to produce a maximum effectiveness of the donative provisions of the will, by using the appointed property to pay outright legacies given by the will of the donee of the power, and leaving his own assets free for the erection of the directed trusts.

The special guardian argues for the rejection of any such plan and for the total invalidity of the act of appointment, placing his chief legal reliance upon the determination in *Low* v. *Bankers Trust Co.* (270 N. Y. 143), in which the Court of Appeals reversed the courts below for doing exactly what the present executors of the son's estate urge this court to do.

Being thus constrained by each of these antagonists to follow identified rulings of the ultimate appellate authority of the State, the adherence to either of which, it is asserted, would involve a rejection of the other, it becomes the part of wisdom to analyze in some detail the two pronouncements involved.

The situation and determination disclosed in *Fargo* v. *Squiers* was as follows:

William G. Fargo died in 1881. His will erected a trust for his daughter Georgia for life, granting her a general power of testamentary appointment over the principal and providing that if she died intestate and without issue, the remainder should be distributed among the heirs at law of the testator.

The daughter died without issue but leaving a will in which she expressly included an exercise of the power to appoint the remainder of the trust created by the will of her father. The residuary direction of her will which failed to distinguish between her own property and that over which she possessed a power of appointment erected four trusts, the beneficiaries of which were persons not in being at the death of William G. Fargo, the original testator.

The daughter possessed an individual estate of $80,000 and made general bequests aggregating $50,000 without including in her will any direction as to the source from which they were to be paid.

The court said (beginning at p. 261):

" We thus have this situation presented: A will in which a trust is created for the benefit of infant children; an estate in which there are two funds, one of which can lawfully be devoted to the purposes of the trust and the other not, and specific legacies in regard to which there has been no direction as to the fund out of which they should be paid. There is no question respecting her intention. She intended the whole of her residuary estate, including that of which she had the power of appointment, to be held for the use of the Squiers children. In so far as her will is in violation of the statute her intention cannot be carried out, but a court of equity, in the exercise of its discretion, has the power to carry out the intention of the testatrix, as disclosed by her will, so far as it is not violative of the provisions of the statute. It cannot devote the trust estate created by the will of William G. Fargo to the making up of the trust created by the will of Georgia Fargo; but it can, for the purpose of carrying out her wishes and intention, require the specific bequests to be paid out of the estate of which she had the power of appointment, thus saving her individual estate unimpaired to constitute the trust provided for by her will. Ordinarily, perhaps, the individual estate would first be exhausted in payment of the specific bequests; but in this case to so pay the specific bequests would not only defeat the main object and purposes of the will, but the intention of the testatrix. The situation is not an uncommon one in principle; it is analogous to the marshaling of the estate of a deceased person. The rule is that the personal estate must be first exhausted in the payment of the debts to the relief of the real estate; but courts of equity will not enforce this rule where it is in apparent hostility to the purpose and intent of the will, and will defeat the bequests made therein. The equitable rule is that where one claimant has two funds to which he may resort to answer his demand, and another claimant has an interest in only one of such funds, he can compel the former to take satisfaction out of the fund in which the latter has no lien, and this rule is applicable to legatees as well as creditors. (*Rice* v. *Harbeson*, 63 N. Y. 493; *Gainsford* v. *Dunn*, L. R. [17 Eq. Cases] 405; *Wilday* v. *Barnett*, L. R. [6 Eq. Cases] 193; *Wollaston* v. *King*, L. R. [8 Eq. Cases] 165.)

" The judgment should be modified so as to direct the payment of the specific legacies under the will of Georgia Fargo out of the residuary estate of William G. Fargo, held in trust for Georgia Fargo, before distribution."

Turning now to a consideration of the situation adjudicated in *Low* v. *Bankers Trust Co.* (270 N. Y. 143), the following is disclosed: In 1914 Francis L. Hine erected a trust with directions to pay the income to his wife for life, upon her death to pay such income to his son, Lyman N. Hine, for life and on the death of the latter to pay the principal to such persons as Lyman might by will appoint, or in default of appointment to the issue of Lyman, *per stirpes.*

Lyman's will failed expressly to exercise the power of appointment thus granted. On his death his sole issue were his children, Francis and Sibyl, both of whom were born subsequent to the date of death of Francis L. Hine. His will directed the payment of his debts, bequeathed $100,000 to his wife which, as noted by the court with considerable emphasis, was specified to be " in lieu of dower or any other interest ' in *my* estate ' " (italics in Court of Appeals opinion) and erected the remainder into two trusts for his two children, Francis and Sibyl. Portions of the principal were to be paid to them when they attained the ages of thirty and forty. The net personal estate of Lyman amounted to $5,200,000, whereas at his death the principal of the Francis Hine trust was approximately $675,000.

The lower courts charged the legacies, debts and taxes of Lyman's estate on the remainder of the trust which had been erected by the deed of Francis in exoneration of Lyman's personal estate.

At page 149 the court points out that under the terms of the trust the two infants were presently entitled to its principal avails unless the principle applied in *Fargo* v. *Squiers* was to be deemed applicable.

It then approached a solution of the question from the standpoint of what the testator, Lyman, intended, saying (at p. 150):

" We can read this will from beginning to end without receiving a suggestion or intimation that the testator had a power of appointment under the deed of Francis L. Hine. The will does not indicate that he even had the power of appointment in mind or that he actually or in fact intended to exercise the power of appointment. It is section 18 of the Personal Property Law, read into this will, which makes it obligatory upon the courts to consider the passing of all personal property as including the power of appointment. This section, however, does not prevent us from seeking the testa-

tor's intention as to other matters from the reading of his will, having in mind the situation and condition of his property. (*Lockwood* v. *Mildeberger*, 159 N. Y. 181, 187, 188.)

"Surely the testator, when he gave a legacy of $100,000 to his wife in lieu of other interests in 'my estate,' did not intend that the legacy should be paid out of the estate of Francis L. Hine.

"The general rule is that the testator's personal estate, which the will does not otherwise dispose of or exempt, constitutes the natural and primary fund for the payment of legacies as well as of debts. This rule is controlling unless the will either in express terms or by necessary implication discloses a different intention on the part of the testator. (*Farmers' Loan & Trust Co.* v. *Kip*, 192 N. Y. 266, at p. 283.) We find nothing in this will of Lyman N. Hine to change this fundamental rule. His estate was amply able to pay all his debts and the trifling legacy, in comparison, left to his wife. Why should all the cost and expenses of administering his personal estate of over five to six million dollars be taken out of the Francis L. Hine estate? We have nothing to show us that such was the intention of Lyman. The size of his estate and the fact that he never even mentioned his power of appointment indicate clearly to our minds that he expected his own estate to pay his debts, the meager legacy, the cost and expenses of administration and the taxes. At least we can be sure of this, that there is nothing in the surroundings or the circumstances or the will itself which indicates in the slightest degree that the testator intended to modify the general rule that his personal estate pay these charges."

Again (at p. 152):

"As the testator intended his personal property to pay his debts and legacies, we do not see how this intent is to be overcome or set aside because of something the testator might have done if he had thought about it, but in reality failed to do. Admitting that the testator did not want his children to have any large amount of money under their control before thirty, we do not see how the courts can take from them that which the law gives simply because the father has failed legally to execute his intent as to this trust property.

"We find nothing in the *Fargo* v. *Squiers* case * * * conflicting with anything that we have here stated."

Finally (at p. 153): "We may say that the *Fargo* case was limited to the facts, to the equities of the situation, all of which were changed in *Framers' Loan & Trust Co.* v. *Kip* (192 N. Y. 266), where a different result was reached without in any way changing the law; the general rule was unmodified by any equities because there were none."

Even a cursory perusal of this latter opinion is sufficient to demonstrate that in its enunciation the Court of Appeals had no intention whatsoever of overruling or modifying the principles stated in *Fargo* v. *Squiers*. Not only is it expressly stated that the instant determination is not in conflict therewith, but this is fully demonstrated by the extended quotation from the opinion in that case and by the final reference to the fact that in *Farmers' Loan & Trust Co.* v. *Kip* " a different result was reached without in any way changing the law " obviously as enunciated in the *Fargo* case.

Since it is apparent that the rule of the *Fargo* case is still applicable to the situations in which " equities " are present similar to those which induced its result, the primary inquiry is as to what " equities " will call for an application of its principles. This requires a comparison of the factual situations disclosed in the *Fargo* and *Low* cases.

In both the will of the donee of the power gave certain general legacies. In the former, no direction was included as to the fund from which payment thereof was to be made; in the latter, there was an inferential direction, greatly stressed by the court, that solution was to be made from the assets of the donee's own estate.

In both the subsequently directed trusts would be wholly valid if erected from the property of the donee of the power, but invalid in so far as constituted from that of the donor.

In the *Fargo* case, if its rule had not been applied, the chosen beneficiaries would have been wholly disappointed to the extent of the invalid direction, since the alternate gift of the donor directed devolution to wholly diverse donees. In the *Low* case the same persons would benefit in either case, the only difference being that under the decision of the Court of Appeals, they received immediate possessory enjoyment which was presumably to their individual advantage, whereas under those of the lower courts, their possessory enjoyment would have been postponed until they attained specified ages with enjoyment of income in the interval.

The judgment reversed in the *Fargo* case refused to marshal the assets so as to apply the property subject to the power to the general legacies; that reversed in the *Low* case had directed the application of such property to the payment of the general legacy which, under the construction of the will adopted by the Court of Appeals, the testator had expressly provided should be paid from his own property, and to the administration and other costs of his estate which were an ordinary primary charge on his own assets.

In the *Low* case the value of the property subject to appointment was insignificant as compared with that of the donee, personally. The *Fargo* opinion does not indicate the comparative figures.

Finally, in the *Fargo* case the exercise of the power of appointment was express, whereas in *Low* v. *Bankers Trust Co.* it was implied by law only, pursuant to the provisions of section 18 of the Personal Property Law.

This court is unable to attach any particular significance to this last-noted circumstance. It is a familiar principle that in a will, as in any other document, existing laws are deemed to be incorporated in like manner as if they were therein set forth at length. (*McCracken* v. *Hayward*, 2 How. [U. S.] 608, 613; *Edwards* v. *Kearzey*, 96 U. S. 595, 601; *People ex rel. City of New York* v. *Nixon*, 229 N. Y. 356, 361; *People* v. *Metropolitan Surety Co.*, 211 id. 107, 113; *City of New York* v. *Interborough Rapid Transit Co.*, 257 id. 20, 33; *Central Trust Co.* v. *Skillin*, 154 App. Div. 227, 232; *Rose* v. *Bristol*, 174 id. 15, 20; *Farmers' Loan & Trust Co.* v. *Winthrop*, 207 id. 356, 371; modfd., 238 N. Y. 477; *Matter of Kelly*, 134 Misc. 399, 401; *Matter of Canfield*, 136 id. 551, 554; *Matter of Sheffer*, 139 id. 519, 522; *Matter of Griffin*, 159 id. 12, 17.) In view of this principle, it is difficult to perceive any sound reason for differentiating a case in which express execution of a power is found in the will from one in which the statutory inference of an intention to exercise arises by virtue of section 18 of the Personal Property Law in the absence of a contrary expression of desire.

Nor can it be deemed that a discrepancy in value between the assets in the estates of the donor and donee can possess any controlling effect in the determination, if, as indicated, this is to be predicated on the presence or absence of " equities " calling for relief to some one or more of the parties affected. Short of a situation in which the principle *de minimis non curat lex* applies, the courts have ever accorded like consideration to the rich and poor alike.

This leaves as distinguishing points between the two cases the facts that in the *Fargo* case no direction which was construable as indicating the source of payment of the several benefits conferred was contained in the will, whereas such a direction in respect of the general legacy was found in the *Low* will, and that in the latter case the same persons would receive the benefit whichever course were adopted, whereas in *Fargo* v. *Squiers* the remainder of the original trust would be diverted to wholly different individuals to the obvious disappointment not only of the named beneficiaries but of the donor and donee of the power if marshaling of assets did not occur.

Unless the court wholly misunderstands the import of the decisions, these are the controlling features in a determination as to whether or not the doctrine of *Fargo* v. *Squiers* is applicable to a given situation. It may not be applied in defiance of a direct or necessarily implied direction in the will of the donee that the individual property of the donee shall be applied in the solution of a particular gift since such application would result in a direct subversion of the testamentary direction.

Absent such showing of express intention, the controlling factor in respect of applicability of the principle is as to whether or not there would be a substantial disappointment in the expectations of some named beneficiary by the application of usual rules. If this be demonstrated, then such beneficiary possesses an equity which will warrant the invocation of the principle " that where one claimant has two funds to which he may resort to answer his demands, and another claimant has an interest in only one of such funds, he can compel the former to take satisfaction out of the fund in which the latter has no lien."

Such is the situation in the present case. The primary and preferred gift under the will of the donee of the power is the initial trust legacy of $50,000 to the widow. She has an equal right against the fund subject to the power and against that belonging to her deceased husband as an individual. His son, Joseph, however, may receive a complete solution of his benefit only from the latter fund. There is no testamentary intimation as to which fund shall be used in the solution of either benefit. The infant son is, therefore, entitled to compel the use in satisfaction of the prior rights of the widow of that fund upon which he has no claim, and the testator will be presumed to have intended that use of the two funds subject to his direction which would result in fulfilment of his expressed intentions and not in defeat thereof.

As thus marshaled, the devolutionary directions are valid in their entirety and since there is at worst an ambiguity in the will respecting the particular fund from which the testator intended the several benefits to be paid, this construction should be adopted as it alone accords with the familiar canon of construction that where two interpretations of the testamentary wish are available, one of which will result in a determination of whole or partial invalidity, and the other in the sustaining of the will in its entirety, the latter is to be adopted. (*Morris* v. *Morris*, 272 N. Y. 110, 116; *Matter of Trevor*, 239 id. 6, 16; *Matter of Moores*, 155 Misc. 471, 473; affd., 248 App. Div. 738; *Matter of Drake*, 153 Misc. 691, 692; affd., 246 App. Div. 758; *Matter of Morss*, 164 Misc. 761, 766.)

The solution urged by the executors of the son's estate that the remainder should be paid over to them for use in satisfying the tax and administration obligations of their estate is unacceptable, since in part, at least, this would be in contravention of their testator's express direction that such obligations " shall be paid and borne by *my* estate."

The contention of the special guardian that the trust for the widow, if erected from the property subject to the power of appointment would be invalid, is wholly without merit. Hers would be merely a second measuring life. There is no permissible inference that she would exercise the power of appointment accorded to her in an unlawful manner.

The property subject to the power of appointment will be applied in *pro tanto* solution of the preferred trust gift to the widow. Upon such application, the composite directions of the will are wholly valid.

Enter decree on notice in conformity herewith.