In the Matter of the Estate of Emma A. C. H. Schrader, Deceased.

Surrogate's Court, New York County, July 7, 1949.

*Bain & Hoopes* for Title Guarantee & Trust Company, as executor of Emma A. C. H. Schrader, deceased, petitioner.

FRANKENTHALER, S. Deceased, an American citizen domiciled in Berlin, Germany, died testate, appointing a New York trust company as executor of her estate. The will has been opened in Berlin and a certificate of inheritance issued to the legatee of the German property, which declares the said legatee to be " heiress of the assets existing in Germany ". No mention was made in that certificate of the executor nominated in the will. That company here seeks ancillary letters of administration, *c.t.a.*

Ordinarily ancillary administration is subordinate to and merely in aid of a domiciliary administration (*Matter of Rogers,* 225 App. Div. 286, affd. 254 N. Y. 592; *Matter of Van Bokkelen,* 156 Misc. 439, mod. 247 App. Div. 721; 1 Jessup-Redfield on the Law and Practice in Surrogates Courts [1st ed.], §§ 525–528), so that if the nominated executor is disqualified under the law of the domicile and another is appointed by the foreign court, the latter will direct the liquidation and distribution of the estate in all jurisdictions where property is located, either by separately qualifying in those jurisdictions or by designating agents to so qualify. Where, however, the testator has indicated an intention that his own designee shall administer the assets located in this State, the laws of this State give priority to such designee over the agent or appointee of the domiciliary administrator. The order of priority of persons to whom ancillary letters shall issue is specified in section 161 of the Surrogate's Court Act. The first sentence of that section provides that " Where the will specially appoints one or more persons as the executor or executors thereof, with respect to real or personal property situated within the state, the ancillary letters testamentary may be directed to the person or persons so appointed, or to those who qualify."

The question to be decided is whether, within the meaning of that statute, a special designation by the testatrix has been made (*Matter of Kelly,* 134 Misc. 399, cf. *Matter of Duncan,* 166 Misc. 93) or whether the letters must be issued to a designee of the person entitled in Germany (Surrogate's Ct. Act. § 161.; *Baldwin v. Rice,* 44 Misc. 64, mod. 100 App. Div. 241, affd. 183 N. Y. 55; *Matter of Renard,* 157 Misc. 174).

In *Matter of Duncan* (*supra*), Surrogate Delehanty, in deciding for the agent of the domiciliary administrator developed a test for determining whether the testatrix had made a special designation as to assets in this State. He there said: " The will contemplates an administration of the estate wherever situated * * *, It does not in any sense segregate the property of the deceased. It does not deal with the New York State property of the deceased separately from the rest of her property for administration purposes. It does not in other words specially designate anybody as the executor of the property in this State."

Applying that test and the rules laid down in *Matter of Kelly*, (*supra*) the court here finds that the testatrix intended her nominated executor to administer the assets located in this State regardless of the disposition of the separate German property. She bequeathed her German assets to a named German legatee and directed that none of those assets " shall be sent to the United States of America " although the executor named in the will was a New York corporation. She evidently understood that under the law of the place of her residence the German assets would pass directly to the legatee without the necessity of a probate proceeding. This intent and knowledge are further evidenced by the fact that in the clause which disposes of those assets no mention is made of the executor or of executorial duties.

In the immediately succeeding clause of the will however, she directed her executor to take possession of her American property on deposit in a custodian account in a New York trust company, and to administer the same (cf. *Caulfield* v. *Sullivan,* 85 N. Y. 153). The record shows that all American assets were located in New York. She provided that these American assets should be divided and eventually paid over to certain American legatees and German legatees. In the event that disbursement to the German group should not be possible " by reason of their residence within the German Empire or Reich, then (she) directs that (her) Executor and Trustee * * * shall withhold and retain such shares in trust, and * * * administer the same until such time as it shall be possible to transfer or pay over such shares to those entitled thereto." There is every reason to believe, therefore, that she intended that her New York assets should in any event be administered by the named American executor, that it was to act to conserve the American estate for the benefit of those who might by virtue of their foreign citizenship be incapable of immediately receiving their assigned shares. She further ordered the executor, in the exercise of sale and investment powers " to consult with and obtain approval " from

a person living in Brooklyn, New York. It is evident that she contemplated a separate local administration of her New York assets and, as was said in *Matter of Kelly* (134 Misc. 399, 401, *supra*) she " preferred [herself] to name the individual who should attend to [her] affairs in each locality ".

Petition granted. Decree signed.